**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Petitioner,**

v.

**Helen F. BLAIN et al., Respondents.**

**No. B–334.**

Supreme Court of Texas.

March 6, 1968.

J. W. Dewbre and Thomas G. Nash, Jr., Johnson, Guthrie, White & Stanfield, Curtis White, Dallas, for petitioner.

Fields, Fields & Hardee, Jack Y. Hardee, Athens, for respondents.

NORVELL, Justice.

The petitioner, Republic National Life Insurance Company, seeks relief here from a summary judgment rendered against it in favor of Helen F. Blain, the widow of Allen J. Blain. This judgment was affirmed by the Court of Civil Appeals, 415 S.W.2d 463.

The basis of Mrs. Blain's claim was a group policy issued by petitioner to members of the Texas Public Employees Association (TPEA) which covered her husband who was a state employee at the Terrell State Hospital. The case is complicated by the action of the Terrell State Hospital employees in changing their group insurance from the TPEA-Republic plan to one promoted and supplied by National Bankers Life Insurance Company. Republic contends that as a result of this insurance switch, Blain was not covered by the group policy issued to the TPEA. The holding of the courts below was that it appears as a matter of law that Blain was covered by the TPEA policy at the time of his death.

Because of disability, Blain's life insurance had been extended by Republic without payment of premiums. When his disability ended, he returned to work and was an active employee at the Terrell State Hospital when he died. We granted writ of error because of a tentative opinion that there was a question of fact involved in the determination of the issue as to whether or not Blain was *eligible* for insurance under the policy after his disability ended.

The TPEA-Republic group policy contained the following provisions relating to life insurance:

"Eligibility of Employees—All Employees, who are members of the Association and who are actively at work on the effective date of this Contract [1948], and those Employees then absent, upon their return to active work, and new Employees as they become members of the Association shall be eligible for coverage, —except that in no case shall any new Employee be eligible until he has completed sixty days of continuous service, is then a Member of the Association and is then actively at work."

"Extended Insurance on Disability— If at the time of discontinuance of premium payments for an Employee's insurance, such Employee while under age 60, is totally disabled from bodily injury or disease which prevents engagement in any occupation for compensation or profit, the insurance will be extended, without payment of premiums, during the continuance of such total disability for a period not to exceed twelve months. * *

"If the Employee ceases to be so disabled and is then eligible for insurance under the Policy, insurance will be continued only if premium payments are resumed. If the Employee ceases to be so disabled and is not then eligible for insurance under the Policy, the insurance will automatically cease thirty-one days thereafter. Irrespective of the continuance of disability the insurance will automatically cease thirty-one days after the end of any year during which the Employee fails to furnish proof of the continuance of disability as hereinabove required or thirty-one days after refusal of the Employee to be examined as hereinabove provided. During the thirty-one day period (mentioned in this paragraph) preceding termination of insurance, the Employee shall be entitled to apply for a policy of life insurance in accordance with the 'Conversion Privilege' of this Contract as though employment had terminated at the beginning of such thirty-one days."

No application for individual life insurance was made under the "Conversion Privilege" clause of the policy.

It appears from the summary judgment proof (answers to interrogatories and affidavits) that prior to November 30, 1963, Allen J. Blain was an active employee of the Texas State Hospital at Terrell, Texas. He was a member of TPEA and covered by a group policy of insurance issued to that organization by Republic. This policy provided for life insurance in addition to accident and sickness insurance with hospital and surgical expense benefits. That portion of the policy relating to life insurance is involved here.

On the date above mentioned, Blain sustained a severe heart attack and retired as an active employee of the hospital. On February 18, 1964, Republic extended Blain's insurance without payment of premiums in accordance with the following letter:

"We acknowledge receipt of completed proofs in connection with this disability.

"The life insurance section of this policy has been extended in accordance with the Waiver of Premium Section of this policy.

"During total disability, it is necessary that you be unable to perform any occupation for wage or profit in order to keep this policy in force. If, at any time

you return to any occupation for wage or profit, please notify us immediately and have your policy reinstated in accordance with the Master Contract.

"It will be necessary for you to file one year from 2/6/64, additional information showing continued, total and permanent disability. No notice of this anniversary date will be given to you by the company."

On February 29, 1964, Republic issued Blain a certificate under the group policy as a retired employee.

On October 6, 1964, Blain, after taking a physical examination, returned to active duty and died some fifty-five days later on November 30th.

We may assume for present purposes that if the facts above set out were the only ones disclosed by the record, Blain would have been *eligible* for Republic insurance and died during the grace period for payment of premiums stipulated in the policy. However, if Blain had entered into a binding contract, either individually or through the Terrell Hospital group, with National Bankers Life Insurance Company under which he had agreed to accept National Bankers as the group insurance carrier in place of Republic, and National Bankers had agreed to be so bound, then it cannot be said that Blain was "eligible" for further Republic insurance coverage

after his disability ended. This case turns upon the question of whether there was a valid contract of substitution. If there was, or if there is a fact issue involved in the answering of the question, then the judgments of the courts below must be reversed and the cause remanded for a conventional trial on the merits. (Republic filed no motion for summary judgment in the trial court. Cf. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 [1958]).

Article 3.51, Vernon's Ann.Ins.Code, provides for the issuance of group insurance policies to associations, groups and classes of public employees. Provision is also made for salary deductions for premium charges. There are two groups of state employees involved in the present situation. The TPEA is a large association to which all state employees may belong. The employees of the Terrell State Hospital constitute a smaller segment of state employees. Both groups are, however, legally authorized to negotiate group insurance contracts. As heretofore noticed, the employees of the Terrell State Hospital were at one time covered by a group policy of insurance negotiated by the TPEA with Republic. However, in April of 1964, a majority of the employees of the State Hospital switched their insurance coverage from Republic-TPEA to a group policy offered by National Bankers Life Insurance Company.[1] On May 6, the business manager of the State Hospital certified that the employees of

1. The action of the Terrell Hospital group was apparently anticipated by Republic. That company submitted and the Commissioner of Insurance approved an amendment to the TPEA-Republic group policy which provided:

"Effective May 1, 1964 persons now insured or who may subsequently become insured as retired persons under this group may be eligible for coverage or to continue coverage provided the State Agency or segment thereof from which they retired from active employment has not adopted a formal group insurance program other than the T.P.E.A. Program and provided the percentage of participants of the active employees eligible for coverage in that agency or segment thereof is not less than 75 per

cent of those persons eligible to participate as of January 1, 1963. The number of active persons actually insured as of January 1, 1963, in any agency or segment thereof will for these purposes be considered as 100 per cent of those eligible to participate. Insurance shall cease at the end of the month during which eligibility ceases. * * *

"All other provisions contained in said group contract, or amendments or endorsements thereto, not in conflict herewith shall remain unaltered and unchanged."

This amendment became effective after February 18, the date upon which Republic recognized Blain's claim to extended insurance.

such hospital were covered by the National Bankers policy and that Blain was eligible for benefits under such policy. In connection with this change of insurance coverage, Blain, on the date mentioned, executed the following written instrument:

"I hereby direct the State Employees Retirement System to discontinue deduction for Group Insurance Premium with the Republic National Life Insurance Company of Dallas, Texas under group program and contract with the Texas Public Employees Association. This cancellation shall become effective May 31, 1964.

"I hereby authorize the State Employees Retirement System to deduct from my monthly annuity, effective June 1, 1964, monthly premiums for my group insurance with National Bankers Life Insurance Company * * *."

This authorization was directed to the State Employees Retirement System and thereafter premiums due upon Blain's accident and sickness insurance were paid to National Bankers. At this time, Blain's life insurance was apparently still being carried by Republic under the extended insurance provision of the TPEA policy.

However, on July 31, Republic notified Blain by letter that as a result of the change in coverage by the State Hospital group, his Republic insurance coverage had been cancelled as of May 1. Blain complained of this action to Republic and the Commissioner of Insurance.

On August 7, the manager of Republic's Life Benefits Department wrote Blain and notified him that it was Republic's position that National Bankers' coverage had replaced that previously held by Republic. On August 24, counsel for Republic wrote Blain and again stated the company's position as follows:

"It is my understanding that you are eligible for coverage with National Bankers Life, which is the company which replaced our coverage for the Terrell State Hospital. I have in my files a notice which states that National Bankers will pick up all personnel whose eligibility is terminated under the Texas Public Employees Association coverage with Republic National, under the replacement coverage furnished by National Bankers. It is indicated in that notice that no one is to lose any coverage as a consequence of this change-over."

On October 6, Blain, after taking a physical examination, returned to work at the hospital. On November 4, the State Retirement Claims Officer wrote Blain as follows:

"Thank you for your letter of October 30, 1964, in which you state that you have returned to employment with the Terrell State Hospital.

"We have also been advised by our Medical Board that, in their opinion, you are no longer incapacitated.

"In view of this, your disability retirement payments have been terminated as of September 30, 1964.

"Your group insurance premium to National Bankers Life Insurance Company for the month of October was deducted from your September annuity and reported to the company. You should make arrangements for your coverage as an active employee to be restored and the premium for November and thereafter deducted from your salary."

Blain died on November 30.

Mrs. Blain sued Republic on March 19, 1965 and three days later filed suit against National Bankers. In the latter suit, she alleged that in April 1964 at a meeting of the employees of the State Hospital, a representative of National Bankers represented that if the hospital employees would change their insurance coverage from Republic to National Bankers, no one would suffer loss of any benefit due to the change; that she and her husband were present and her husband's case was specifically

mentioned and the National Bankers agent informed of the fact that Blain at the time had a waiver of premiums in effect with Republic. Mrs. Blain also alleged that the National Bankers' representative distributed a pamphlet to all present which contained the following statement:

"6. NABLICO guarantees that no one will suffer loss of any benefit or eligibility due to change from TPEA coverage to NABLICO coverage."

Mrs. Blain further alleged that although National Bankers was obligated to afford her husband the same coverage he had had with Republic, the certificate issued to him contained no life insurance provision, although such coverage was included in the other certificates issued to the Terrell State Hospital employees.

Republic argues that by virtue of the certification for the National Bankers insurance program, the cancellation of Republic's payroll authorization, and the other circumstances above referred to, there was a fact issue involved as to whether or not Republic coverage had been superseded by that of National Bankers insofar as Blain was concerned. Under our summary judgment procedure, the burden was upon Mrs. Blain as the proponent to demonstrate as a matter of law that National Bankers coverage *had not* taken the place of the Republic coverage. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952).

While, as heretofore pointed out, Republic on July 31, notified Blain that his insurance was cancelled as of May 1, we may for present purposes disregard this contention. However, the record indicates that Blain's disability came to an end on or before October 6, the date he returned to work. His disability retirement payments were terminated as of September 30 and he was notified that he should make arrangements for the restoration of his insurance coverage as an active employee and for salary deductions for premium payments for the month of November and

thereafter. As above pointed out, the hospital business manager on May 6, 1964 had certified that "Terrell State Hospital has a group insurance program in effect as of this date, and that such program provides coverage for Active and Retired Employees of this Department. The Group Insurance Carrier is National Bankers Life Insurance Company." He further certified that, "Allen J. Blain a Retired Employee of this Department is eligible for Group Insurance Benefits under this program and contract with the National Bankers Life Insurance Company."

This certificate is not restricted to accident and sickness features of the plan although the payroll deduction authorization addressed to the State Employees Retirement System may be so construed.

In our opinion, the summary judgment record does not conclusively establish that there was no valid binding agreement between National Bankers and the employees of the Terrell State Hospital under which Mr. Blain, despite his then existing disability, would be covered to the same extent he was covered under the TPEA-Republic plan. If there was such an agreement, Mr. Blain would not be eligible for continued Republic protection.

Undoubtedly, Mr. Blain was eligible for Republic insurance when the TPEA policy was issued but this does not mean that he remained forever eligible. The contracting parties could renounce the policy agreement if they so desired and Blain could then accept a substitute insurance carrier. Republic asserts that this substitution did take place, and the summary judgment proofs do not resolve this issue against Republic as a matter of law. It appears probable that Blain was covered under the extended insurance clause of the TPEA-Republic policy, but this clause is explicit as to the termination of such coverage when an "insured" is not eligible for insurance under the policy—"the insurance will automatically cease thirty-one days" after the disability of the insured ends.

In the trial court, a motion was made to consolidate Mrs. Blain's suit against Republic with the one she instituted against National Bankers. Judging from the present record, it seems probable that one or the other of these insurance companies is liable upon a contract of life insurance. It cannot be said that either Mr. Blain or Mrs. Blain were estopped from claiming under the Republic policy simply because they *attempted* to obtain other insurance after they received notice from Republic that Mr. Blain was no longer covered by the TPEA-Republic group policy. However, if Mr. Blain did attempt to secure other insurance, and as a result of his efforts and those of the members of the Terrell State Hospital group, a policy was secured from National Bankers Life Insurance Company which superseded the TPEA-Republic policy, then a different question is presented for if a substitution of companies occurred, Republic would no longer be liable.

We have been somewhat handicapped in obtaining a complete picture of the controversy because we have not heard from National Bankers. A reply of that company to the motion to consolidate is shown in the present transcript. Such reply asserted that the issue between Mrs. Blain and National Bankers "can only be based on the breach of a contract to issue an insurance policy." Evidently it is National Bankers' position that while they were obligated to and did take over part of the insurance coverage afforded by the TPEA-Republic policy, they were not obligated to take over the life insurance coverage insofar as Mr. Blain was concerned. The issue of whether by its dealings with the Terrell Hospital group, National Bankers became contractually liable to afford life insurance protection to Mr. Blain would seem rather decisive of the present controversy. It appears that this controversy is primarily a quarrel between two insurance companies, and that a consolidation of the two causes filed by Mrs. Blain would be appropriate. However, we are of the opinion that this is not a case for summary judgment but rather one for a conventional trial on the merits. Womack v. Allstate Insurance Co., 156 Tex. 467, 296 S.W. 2d 233 (1957); Gardner v. Martin, 162 Tex. 156, 345 S.W.2d 274 (1961); McDonald, Civil Practice in Texas, § 17.26.1 (cumulative supplement).

The judgments of the courts below are reversed and the cause remanded for new trial.