## NORTHEASTERN LIFE INSURANCE COMPANY OF NEW YORK et al., Appellants,

v.

## Mrs. Edward M. (Joan) GASTON et al., Appellees.

### No. 568.

Court of Civil Appeals of Texas, Tyler.

July 29, 1971.

Rehearings Denied Sept. 2, 1971.

Brundidge, Fountain, Elliott & Churchill, Bobby D. Dyess, Dallas, for appellant Northeastern Life Ins. Co. of New York.

Brooks, Montgomery & Matthews, O. D. Montgomery, Dallas, for appellees-appellants Mrs. Edward M. (Joan) Gaston and others.

Walker, Choate & Walker, James H. Walker, Leonard E. Choate, Dallas, for appellee Girard Life Ins. Co. of America.

McKAY, Justice.

Mrs. Edward M. (Joan) Gaston, in her individual capacity, together with Eddie Wayne Nickels, as co-executors of the Estate of Edward M. (Marcellous) Gaston, deceased (hereinafter called Gaston), brought this suit against Northeastern Life Insurance Company of New York (hereinafter called Northeastern), and Girard Life Insurance Company of America (hereinafter called Girard), for life insurance benefits of $6,000 plus interest, attorney's fee and penalty, and also for hospital and medical benefits of $1,750.57 plus interest, penalty and attorney's fee. Plaintiffs alleged that Gaston was an insured by reason of a group policy. Trial was before the court without a jury, and judgment was for plaintiffs against Northeastern, and that plaintiffs take nothing against Girard. Northeastern has appealed and plaintiffs have appealed the take nothing judgment against Girard.

Tom I. McFarling, temporary receiver for Girard Life Insurance Company of America, has been substituted as a party for Girard.

Gaston was a partner in Nickels Ginning Company of Lamb County, and the ginning company was a contributing employer of Texas Cotton Ginners Association and to the Group Insurance Policy No. Y240352 issued by Girard, as insurer, to the trustees of the Texas Cotton Ginners Association (hereinafter called Trustees), as policy holder, effective February 1, 1968. Gaston retained Certificate No. 62 as an insured under the group policy, and his wife, Joan Gaston, was beneficiary. By virtue of a classification, he was insured for $6,000 life insurance under the terms of the policy and also for hospital and medical benefits. Premiums were paid for Gaston to and including October 31, 1968, at which time Girard's policy was canceled and terminated by agreement of the Trustees and Girard. No premium was paid for Gaston to Girard after October 31, 1968, and Girard paid all of its liability for hospital and medical expenses incurred by Gaston up to and including October 31, 1968.

The Trustees had asked for bids from other insurance companies to replace the Girard coverage, and Northeastern submitted the best bid for group coverage. On September 5, 1968, Northeastern, acting by and through its Vice-President, Henry S. DeLaura, sent the following telegram to Tony Price, Executive Director of the Texas Cotton Ginners Association, and one of the Trustees:

"NORTHEASTERN LIFE AG(R)EES TO TAKE OVER LIABILITY AND PREMIUM EFFECTIVE OCTOBER 1, 1968 FOR BALANCE OF CURRENT QUARTER REMAINING WITH *GERARD*. CURRENTLY INSURED WILL NEITHER GAIN OR LOSE BENEFITS. BILLING AND NEW QUARTERLY RATES WILL BE FORWARDED NOVEMBER 1, 1968 FOR 2 MONTHS. FOR CURRENT INSURED ABOVE CONDITION SUBJECT TO RECEIPT BY NORTHEASTERN LIFE OF COMPLETED APPLICATION, TRUST AGREEMENT AND BINDER CHECK EQUAL TO THE OCTOBER 1968 PREMIUM."

By agreement, the effective date of Northeastern's coverage was changed to November 1, 1968, and the Trustees complied with all the conditions set out in the telegram and accepted the Northeastern Group Policy by filing with Northeastern on October 23, 1968, a completed application and trust agreement, and by paying the required premiums for the quarter beginning November 1, 1968, and ending January 31, 1969.

On November 9, 1968, Nickels Ginning Company, as a contributing employer, paid to Northeastern the insurance premium due for the period from November 1, 1968, to and through January 31, 1969, under Group Policy No. 609–LAH, which payment included payment for Gaston who was listed among the partners, officers and employees.

Gaston was under the age of sixty at all times material, and he had been insured under Girard's policy No. Y240352 and 229 for more than twelve consecutive months up to November 1, 1968. Gaston died on November 24, 1968, at age 41, from a brain tumor which had its onset seven or eight months prior to his death. He was not active in the operation of Nickels Ginning Company at the time of his death, nor on November 1, 1968, because of illness, and he had not worked since August 15, 1968, because of such illness. He first became ill about August 10, 1968, and after August 15, 1968, he was in the hospital except for four or five days when he was allowed to go home awaiting admission to a different hospital. He had surgery for the brain tumor on September 9, and again on September 16, 1968, and died on November 24, 1968. Claim was made against Girard and against Northeastern, and each claim was denied.

Appellants' points are all addressed to the same question:

(1) Whether coverage under Girard's policy terminated and came to an end so as to preclude its liability to Gaston on November 1, 1968, or

(2) Whether Northeastern on November 1, 1968, became the insurer of all association members covered by Girard's policy which included coverage of Gaston.

It is contended that Girard's liability for life insurance continued after November 1, 1968, because Gaston was totally and permanently disabled and Girard's policy provided in section entitled "Group Life Policy—Continuance of Insurance During Disability":

"If an insured person becomes totally and permanently disabled as hereinafter defined while under age 60 and if such insured person was continuously insured hereunder for twelve consecutive months preceding the date that his employment terminated as a result of such total and permanent disability, upon receipt of due proof of such disability, his insurance hereunder shall be continued in force, subject to the following provisions and without payment of premiums for such insured, during the uninterrupted continuance of such total and permanent disability.

"Total and permanent disability shall mean bodily injury or disease which wholly, continuously and permanently prevents the insured person from engaging in any occupation for compensation or profit."

The "Hospital Expense Benefit" section of the Girard policy provides for payment of hospital room and board and miscellaneous hospital expenses "(i)f an insured person * * * shall be confined in a hospital as a result of accidental injury or sickness * * *." This section does not provide when such benefits shall terminate, but the section titled "Exclusions Accident & Health Benefits" provides:

"The Insurance Does Not Apply: * * * to loss or expense incurred after Termination Date of Insurance * * *

"The insurance provided hereunder applies only to loss or expense incurred while the Master Policy is in full force and effect * * *."

The facts were stipulated or undisputed as set out herein. Findings of Fact and Conclusions of Law were requested of and filed by the trial court, however, and the court found in finding No. 13 that:

" * * * it was understood at the time Northeastern was accepted as insur-

er, that all who had had coverage under the Girard Policy would be covered by Northeastern, without the necessity of a physical examination."

■ We are of the opinion that Girard's policy and its liability to Gaston came to an end on November 1, 1968, and that on that date, Northeastern became the insurer of all association members including Gaston. When the Girard group policy terminated by agreement on October 31, 1968, Girard's liablity under said policy ceased. Livingston v. Aetna Life Ins. Co., 246 S. W.2d 261 (Tex.Civ.App., Dallas, 1952, writ ref.). We are of the opinion that Drinkard v. Group Hospital Service, Inc., 366 S.W. 2d 637 (Tex.Civ.App., Dallas, 1963, writ ref., n. r. e.), and Prudential Insurance Co. of America v. Beall, 454 S.W.2d 478 (Tex.Civ.App., Eastland, 1970, writ ref., n. r. e.), cited by Northeastern, are distinguishable from the case here.

After negotiations between Northeastern and Trustees, Northeastern sent the hereinabove quoted telegram stating "Northeastern Life ag(r)ees to *take over* liability and premium effective October 1, 1968 (changed to November 1, 1968) * * * Currently insured will neither gain or lose benefits." (Emphasis ours). A master policy was issued by Northeastern to Trustees on December 16, 1968, such policy being effective November 1, 1968, but Gaston never received any certificate.

The record shows that Trustees were attempting to get an insurance company to replace Girard for the same monetary outlay without extensive paper work or evidence of insurability and to continue the insurance program as it then existed. The telegram answered these questions for Trustees. Northeastern began paying claims on the terms and conditions of Girard's policy and did so until December 16, 1968. If Girard would have been liable had its coverage continued, Northeastern had agreed to be liable likewise.

We construe the telegram to mean that Northeastern would *take over* or assume the liability of Girard under Girard's policy on the same terms and conditions so that the insured persons would neither gain or lose benefits. The word "take" has been held to be equivalent to or synonymous with "assume." 83 C.J.S., page 939. To "assume" means to adopt, receive or take up, to become bound as another is bound, or to put one's self in place of another as to an obligation or liablity. Gulf Oil Corporation v. Spence & Howe Construction Company, 356 S.W.2d 382, 389 (Tex.Civ. App., Houston, 1962, affirmed 365 S.W.2d 631); Texas Employers Insurance Association v. Texas and P. Ry. Co., 129 S.W. 2d 746 (Tex.Civ.App., Eastland, 1939, writ dism., judg. corr.). Webster's Seventh New Collegiate Dictionary (G. & C. Merriam Co., 1969), defines "take over" as "to assume control or possession of or responsibility for."

■ Northeastern executed no assumption certificate and Girard paid no consideration to Northeastern to take over the coverage of all persons insured by Girard and neither was necessary as Northeastern did not take over or assume any then accrued and payable liability of Girard. Northeastern substituted itself for Girard to pay benefits to all persons insured under Girard's policy which would accrue or become payable on and after November 1, 1968. See Republic National Life Insurance Company v. Blain, 425 S.W.2d 347 (Tex.Sup., 1968).

In Section 10 of the Application for Group Insurance made by the Ginners Association on October 23, 1968, under "Waiting Period for employees—For those employed on or before the Effective Date" was written "Immediately." Under Section 28 of such application is written:

"Each insurance coverage hereby applied for is not to replace, nor is it in addition to, any such insurance now or previously in force, except as stated below: Insurance Coverage—Life and Health; Date Discontinued—10–31–68; Name of Insurance Company—Girard Life Insurance Company."

Northeastern contends Gaston never became eligible for coverage under its policy because the policy provided (1) no agent, broker or home office representative has authority to change the application of any policy or to waive any of the provisions; (2) the rights of any insured employee or any beneficiary shall not be affected by any provision other than in the policy or in the application therefor; and (3) a member of a partnership that operates a gin must actively participate in such operations, or an employee to be actively at work must report for work on the date in question at the usual place of employment able to perform all of the usual and customary duties of his occupation, and he must not be hospital confined or disabled to a degree he could not then have reported to a place of employment.

While there was no competent medical evidence in the record as to Gaston's disability or condition on any specific date, it is undisputed he was hospitalized on November 1, 1968, and died on November 24, 1968. The death certificate shows the cause of death to be a brain tumor with onset seven to eight months prior to death. Gaston was already an insured under Girard's policy, and Northeastern *took over* all of the Ginners Association's insureds, as they were, without any requirement as to their insurability, and Gaston therefore became one of Northeastern's insureds. Liability for Gaston's benefits for which this suit is brought did not accrue or ripen until after Northeastern had assumed liability. He was not a new employee or a new partner to whom the eligibility provisions of the policy were designed to apply. There was a completed contract for substitution of companies made without the knowledge or consent or control of Gaston, but which substitution affected him and caused Northeastern to become liable for his benefits. Republic National Life Insurance Company v. Blain, supra.

■ Northeastern accepted the risk before Gaston's death and cannot now be heard to claim he was not an eligible part-

ner or employee. The representations made in Northeastern's telegram were relied upon by Trustees as evidenced by their action in terminating Girard's policy and complying with the conditions of Northeastern's telegram.

We are not unmindful of the general rule in Texas concerning the law of waiver and estoppel with respect to risks designated in an insurance policy. It is stated in Great American Reserve Ins. Co. v. Mitchell, 335 S.W.2d 707 (Tex.Civ.App., San Antonio, 1960, writ ref.):

> "* * * Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel can not create a new and different contract with respect to risks covered by the policy. This has been the settled law of Texas since the decision in Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854. * * *"

The above rule is not applicable to the case at bar. We have here a binder or a contract to insure which could not be changed retroactively by the terms of a policy issued after Gaston's death. It is stated at page 151 in Travelers Indemnity Co. v. Holman, 330 F.2d 142 (5th Cir. 1964):

> "* * * Texas law does not require any particular form, and it recognizes the validity of a binder, a contract to insure, or a contract of insurance regardless of its informality. 32 Tex.Jur.2d, Insurance § 5, at 29, § 11, at 36, § 12, at 37, §§ 46, 47, at 90–91 (1962). * * *"

The following quotation from the same case, at page 151, concerns promissory estoppel:

> "'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such ac-

tion or forbearance is binding if injustice can be avoided only by enforcement of the promise.' Restatement, Contracts, § 90 (1932). * * *"

In International Motorists Association v. Aguilar, 402 S.W.2d 516 (Tex.Civ.App., Austin, 1966, writ dism.), we find this language:

"We have no doubt that a simple agreement to renew an insurance policy or to renew an identified contract, where no new terms are added, is sufficient to incorporate the provisions of the old policy or contract into a new agreement on the same terms as the former agreement."

We hold Northeastern waived any requirement for Gaston to show good health or insurability and is estopped to deny Gaston's claim on that ground.

The judgment of the trial court is affirmed.