**W.L. FREEMAN, Sr., Plaintiff,**

v.

**Randy MOWDY and the Travelers Insurance Company, Defendants.**

**Civ. A. No. E88-0115(L).**

United States District Court,
S.D. Mississippi, E.D.

June 13, 1990.

Charles C. Pierce, Decatur, Miss., for plaintiff.

Clifford K. Bailey, III, Jackson, Miss., for defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff W.L. Freeman, Sr. brought this action seeking to recover benefits which he claims are due under a policy of group health insurance issued by defendant The Travelers Insurance Company (Travelers). This cause is now before the court on the motion of Travelers for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

The plaintiff, W.L. Freeman, Sr., has served as Justice Court Judge of Newton County, Mississippi since 1984. As a county employee, plaintiff and his wife, Cora Freeman, were covered under a policy of group health insurance for Newton County employees and their dependents issued by United of Omaha Insurance Company. On January 1, 1986, the United of Omaha policy was replaced with a similar policy issued by Protective Service Life Company (PSL). The PSL policy remained in effect until May 31, 1987, when it was cancelled by the Newton County Board of Supervisors (the Board).[1] In May 1987, pursuant to the authority granted by Miss.Code Ann. § 25–15–101, the Board procured group health insurance coverage from Travelers for the benefit of public officials and employees of Newton County and their eligible dependents to replace the coverage which had been provided by PSL. It is undisputed that plaintiff was himself eligible for coverage under the Travelers group policy and that he, in fact, became covered under the policy. This case, though, raises the questions of whether plaintiff's wife, Cora Freeman, was eligible for coverage and whether Travelers was required to have insured her under its policy.

It is agreed that in the late 1970's Mrs. Freeman was diagnosed with multiple sclerosis. By early 1984, she had become a total bed care patient. At the time the United of Omaha coverage terminated and the PSL policy became effective, Cora Freeman was totally disabled. It is further undisputed that during the negotiations for the Travelers policy, Mrs. Freeman remained totally disabled and was either hospitalized at Rush Memorial Hospital in Newton or receiving full-time care at Convarest Nursing Home in Newton. Indeed,

---

1. Because of high losses on its policy with Newton County, PSL had determined that upon renewal of the policy, it would institute a 200% premium increase. The proposed increase prompted the Board to seek coverage from another source.

she had been so confined since October 9, 1986 and remained in either the nursing home or hospital until her death on December 12, 1988.

When Mr. Freeman was made aware that the PSL Policy was to be replaced, he submitted an enrollment card seeking coverage for himself and his wife under the Travelers policy and authorized deduction for payment of the premium from his pay. Travelers' policy, though, contained a non-confinement provision, as follows:

> Any dependent, other than a newborn child, confined in a hospital or other institution on the date such coverage is to become effective will not be covered under the comprehensive medical expense benefits part of the insurance until 30 days have elapsed during which such dependent has not been so confined, or before that if the Travelers is furnished evidence that such dependent has completely recovered from all injuries and sicknesses or the pregnancy causing the confinement has been terminated.

Mr. Freeman was advised that coverage would not be provided for his wife and he, therefore, at the request of the Chancery Clerk, Janice Nelson, submitted another enrollment card on which he indicated that he did not seek coverage for his wife.[2] The Travelers policy was issued to Newton County and became effective June 1, 1987. Mrs. Freeman was not considered an insured by Travelers and no premium was ever paid for her to be covered.

Plaintiff brought this action in October 1988 charging that he was entitled to coverage under the Travelers policy for both himself and his wife and that Travelers, in violation of its contractual and statutory obligations, had wrongfully refused to provide insurance coverage to Mrs. Freeman. According to plaintiff, Mrs. Freeman was eligible for coverage under the policy provisions; as such, Travelers, occupying the position of a replacement insurance carrier,

was compelled under Mississippi law, and in particular, Miss.Code Ann. § 83–9–35 (Supp.1989), to insure Mrs. Freeman. Plaintiff reasons that since his wife was an "eligible dependent," as that term is defined in the policy, she was automatically and necessarily eligible for coverage. Travelers does not contend that Mrs. Freeman was not an eligible dependent, for clearly she was; but it claims that even though she was an eligible dependent, she was still required to qualify for coverage under the provisions of the policy. Travelers takes the position that the policy's non-confinement clause rendered Mrs. Freeman ineligible for coverage and that, contrary to plaintiff's position, Miss.Code Ann. § 83–9–35 does not mandate an unqualified continuation of coverage by a replacement carrier.

Plaintiff first argues that the non-confinement provision is addressed to the time coverage is to commence and not eligibility for coverage. Travelers claims that the provision rendered Mrs. Freeman ineligible for coverage. The parties' dispute over Mrs. Freeman's "eligibility" amounts for all practical purposes to nothing more than a conflict of semantics, more superficial than substantive. Whether one considers the confinement provision to relate to "eligibility" or "to the time coverage was to begin" is, in the court's opinion, of no practical import for in either event, the effect of the provision is the same. That is, the prospective insured does not become covered until she becomes eligible for coverage. Thus, if the provision, as applied in this case by Travelers, does not run afoul of Miss.Code Ann. § 83–9–35, then the fact that Mrs. Freeman was at all times confined to a hospital or other institution resulted in an unavailability of coverage; because of that confinement, either she was not eligible for coverage at any time or the coverage never began.

---

**2.** There is some conflict as to Mr. Freeman's motivation for submitting a second enrollment card on which he deleted his request for dependent coverage. Plaintiff claims that Travelers, rather than refusing to provide coverage for Mrs. Freeman, had the first enrollment card returned to him with directions that he not seek coverage for his wife when submitting a new enrollment card. For purposes of this motion, the court will accept as true plaintiff's averment that he omitted his request for dependent coverage when told by Travelers to do so.

Section 83-9-35 of the Mississippi Code provides as follows:

(1) Upon the replacement by a group insurance carrier, of any group or blanket health and accident insurance policy or plan for ten (10) or more members issued by another group insurance carrier for delivery or delivered in this state, any limitation on benefits otherwise payable because of preexisting conditions clauses, if any, in the succeeding carrier's plan shall not be more than the lesser of:

(a) The benefits of the new policy or plan determined without application of the preexisting conditions limitation; or

(b) The benefits of the prior policy or plan.

(2) In a group of ten (10) or more members, the succeeding carrier shall give credit for the satisfaction or partial satisfaction of any deductibles or waiting periods in its plan effected under a prior plan providing similar benefits. In the case of deductible provisions, the credit shall apply for the same or overlapping benefit periods and shall be given for expenses actually incurred and applied against the deductible provisions of the prior carrier's policy or plan during the ninety days preceding the effective date of the succeeding carrier's plan but only to the extent these expenses are recognized under the terms of succeeding carrier's policy or plan and are subject to similar deductible provisions.

(3) In a group of ten (10) or more members in any situation where a determination of the prior carrier's benefit is required by the succeeding carrier and at the succeeding carrier's request, the prior carrier shall furnish a statement of the benefits available or pertinent information sufficient to permit verification of the benefit determination or the determination itself by the succeeding carrier. For the purposes of this section, benefits of the prior policy or plan will be determined in accordance with all of the definitions, conditions and covered expense provisions of the prior policy or plan rather than those of the succeeding policy or plan. The benefit determination will be made as if coverage had not been replaced by the succeeding carrier.

Plaintiff reads the statute as mandating coverage by a succeeding carrier in order to avoid a gap in insurance coverage or a complete loss of benefits caused solely by an employer's decision to replace group coverage. He asserts that he and his wife had the unfettered right to choose coverage for her and that Travelers, in the event they elected coverage, was required by the statute to provide her unrestricted coverage.[3] The court, however, concludes that the statute serves a more limited function: It merely precludes a replacement carrier from limiting benefits for conditions which arose during and were covered under the prior carrier's plan; it does not compel the succeeding carrier to provide coverage to one who is not eligible for coverage under the terms of its policy.

There are no Mississippi cases construing section 83-9-35. The Mississippi legislature appears to have derived the language of the statute from a model regulation for group coverage discontinuance and replacement proposed by the National Association of Insurance Commissioners. Section 7 of the model regulation concerns continuance of coverage in situations involving replacement of one carrier by another; the lan-

---

**3.** Plaintiff argues in his brief that he had an inalienable right to choose insurance coverage for his wife under Miss.Code Ann. § 25-15-101 (Supp.1989), which authorizes county governments to secure group insurance for their employees:

The governing body of any county ... are hereby authorized and empowered in their discretion to negotiate for and secure for all or specified groups of employees and their dependents of such county ... a policy or policies of group insurance covering the life, salary protection, health, accident and hospitalization ... of such of its employees and their dependents as may desire such coverage.

Contrary to plaintiff's assertion, the statute has no bearing on this case. The statute simply grants to the board of supervisors the discretionary authority to secure insurance coverage for some or all county employees. *See Warren County v. Culkin,* 497 So.2d 433, 436-37 (Miss. 1986). It does not purport to regulate the conduct of insurance companies. Any cause of action for any violation of the statute would lie only against the board of supervisors.

guage of the Mississippi statute is virtually identical to section 7(c)(3), (4) and (5) of the model regulation, relating to the liability of the succeeding carrier in group coverage replacement situations. The Mississippi statute, though, does not include what is section 7(c)(1) of the model regulation, which requires that a succeeding carrier's benefit plan cover "[e]ach person who is eligible for coverage in accordance with the succeeding carrier's plan of benefits (in respect of classes eligible and activity at work and non-confinement rules)," nor does it mandate certain benefits for persons who are not eligible for coverage, as does section 7(c)(2) of the model regulation:

> Each person not covered under the succeeding carrier's plan of benefits in accordance with (the) above must nevertheless be covered by the succeeding carrier in accordance with the following rules if such individual was validly covered (including benefit extension) under the prior plan on the date of discontinuance if such individual is a member of the class or classes of individuals eligible for coverage under the succeeding carrier's plan.

Instead, section 83–9–35 regulates only preexisting condition clauses and operates only to limit the effect of such clauses on benefits which would otherwise be payable if the person were qualified for coverage under the succeeding carrier's policy. In the court's opinion, the fact that the legislature, while adopting the preexisting condition limitation provision, elected not to enact those portions of the model regulation

requiring coverage by the replacement carrier, or an equivalent directive, indicates an affirmative decision not to mandate such coverage. The statute does not eliminate or alter the requirements and conditions which must be met in order to be covered under a replacement carrier's plan or receive benefits under its plan. The statute does not state nor does it intimate that the replacement carrier is not entitled to insist that the person to be covered under its policy satisfy the provisions of its policy before she receives benefits. It requires only that a person who is eligible for coverage under the policy not be denied benefits for preexisting conditions for which benefits would have been payable but for the insurance replacement.

Plaintiff next contends that the non-confinement clause does not establish a coverage eligibility requirement, as claimed by Travelers, but instead functions effectively as a preexisting condition limitation which, under the terms of section 83–9–35, could not operate to reduce the benefits to which Mrs. Freeman was entitled.[4] Travelers could not, therefore, declare Mrs. Freeman ineligible for coverage on the basis of her confinement.[5]

Section 83–9–35 does not define "preexisting condition clauses." Travelers' policy, though, in addition to the non-confinement clause, contained a specific exclusion for preexisting conditions:

> A preexisting condition is any injury, sickness or pregnancy, childbirth or re-

---

**4.** An additional argument by plaintiff requires brief mention. The non-confinement provision appears in the policy's section entitled "When Your Insurance Commences." The following language appears immediately preceding this provision:

> Each of your eligible Dependents will be covered on the date you become insured with respect to your Dependents or the date such person becomes a Dependent, whichever is later, provided you, if your employer requires contributions from you for such insurance, have enrolled for benefits for your Dependents.

Plaintiff insists that these two paragraphs send conflicting signals and thus create an ambiguity in the policy as to when coverage for a dependent begins. A contract is said to be ambiguous if more than one reasonable meaning can be ascribed to the language used. As has often been recognized, the question of whether an ambiguity exists in a contract is a question of law to be decided by the court. See Freeman v. Continental Gin Co., 381 F.2d 459, 465 (5th Cir.1967). In the court's opinion, there is but one reasonable interpretation of the provisions challenged by plaintiff; that is, coverage for dependents under the comprehensive medical expense benefits part of the policy becomes effective on the date the employee becomes insured unless that dependent is confined in a hospital or institution on that date.

**5.** Whether Mrs. Freeman was covered by the PSL policy at the time of the issuance of Travelers' policy is a matter disputed by the parties. The matter of PSL's obligations under its policy is addressed infra.

lated medical condition for which medical care and treatment is received by you or your dependent during the three month period ending on the date of coverage. In the event of a preexisting condition, coverage for that condition will be postponed until three consecutive months have elapsed during which no care or treatment has been received. However, even if treatment is continuous, you will be covered with respect to that condition after your insurance has been in force during active employment for six months. Your dependent will be so covered after his insurance has been in force for twelve months.

Plaintiff is correct in his assertion that a non-confinement provision can operate to preclude coverage for a condition that arose while the prospective insured was covered under a prior policy. Most often, a condition that would hospitalize a dependent as of the date coverage is to be effective predates the policy and is thus preexisting.[6] However, a non-confinement clause is distinguished from a preexisting condition clause. An enforceable preexisting condition clause does not render an individual with a preexisting condition ineligible for immediate coverage; she can become insured under the policy but not covered for the particular condition that was preexisting. A non-confinement clause, if implicated, prevents coverage from becoming effective altogether, without reference to the nature of the condition or conditions for which she is confined. Indeed, that there is a distinction between the two types of provisions was recognized by the National Association of Insurance Commissioners in their promulgating of the model regulation. The model regulation contains separate sections regulating eligibility and preexisting condition clauses, and speaks of non-confinement rules in terms of ineligibility for coverage.[7]

■ Even were the court to assume that Travelers was required to provide coverage to the same extent as the prior carrier, and were to further assume that the non-confinement provision of Travelers' policy was a preexisting condition limitation as urged by plaintiff, the court would still conclude that Travelers was not required by section 83–9–35 to provide her coverage. Travelers did, as contemplated by the Mississippi statute, replace a group insurance policy; and consequently, indulging in the above stated assumptions, Travelers was thus required to conform its preexisting condition limitations in the manner prescribed by the statute. The statute, though, applies only when benefits would have been available under the prior plan. Mrs. Freeman was originally covered under the policy issued by United of Omaha. At the time of discontinuance of the coverage, and the commencement of coverage by Protective Service Life, Mrs. Freeman was totally disabled. The United of Omaha policy provided for payment of extended benefits until the earliest of "(1) one year from the date insurance ended; (b) the date you or your dependent becomes covered under another group plan; or (c) the date the total disability ends." When the PSL policy became effective, PSL took the position that it was not required to pay benefits to or on behalf of Mrs. Freeman beyond the one-year period that she would have been entitled to receive extended benefits under the United of Omaha coverage which PSL replaced.[8] The PSL policy became effective on Janu-

---

6. It is not necessarily the case that the confining condition would predate the replacement coverage. The person to be insured could become ill and be hospitalized on the very date the succeeding carrier's policy is to become effective, in which case the non-confinement clause would preclude coverage for the individual who had no preexisting condition.

7. The Model Regulation for Group Coverage Discontinuance and Replacement, in section 7, relating to continuance of coverage in situations involving replacement of one carrier by another, requires the succeeding carrier to cover "[e]ach person who is *eligible for coverage* in accordance with the succeeding carrier's plan of benefits (in respect of classes eligible and activity at work and *non-confinement rules* )."

8. The PSL policy contained a non-confinement policy identical to that included in Travelers' policy. When PSL replaced United of Omaha's policy, Mrs. Freeman was totally disabled, but she was not at that time confined to the hospital or nursing home. She was, therefore, not ineligible for coverage under the PSL policy.

ary 1, 1986 and remained in effect until May 31, 1987. PSL would, therefore, have provided coverage for Mrs. Freeman for one year, through December 31, 1986. The Freemans, however, believed that Mrs. Freeman was entitled to full coverage under the PSL policy. PSL filed a declaratory judgment action against the Freemans which resulted in a settlement between the parties.

Traveler's argues, and the court concludes, that any right Mrs. Freeman may have had to benefits under the PSL policy was extinguished in the settlement between the Freemans and PSL. Had PSL's policy not been replaced by Travelers, Mrs. Freeman would have been entitled to recover nothing further from PSL. As a consequence, the settlement operated for the benefit of Travelers, as the replacement carrier. Since Mrs. Freeman was no longer entitled to benefits and was not receiving benefits from PSL, as to her, there was no coverage for Travelers to replace. There was no "gap" to fill. Yet even in the absence of the settlement, Mrs. Freeman's coverage under the PSL policy would have been exhausted by the time Travelers' policy replaced the PSL policy. PSL was required to pay only such benefits as Mrs. Freeman was entitled to receive from United of Omaha and as a consequence, there would have been no coverage gap to be filled. That is, because United of Omaha's benefit extension had been satisfied by PSL before Travelers' replacement of the PSL policy, Mrs. Freeman would have been no longer covered under the prior plan when the Travelers policy took effect.[9]

It appears to the court that plaintiff's true objection to the non-confinement provision of the policy is based on his perception that it conflicts with the spirit of section 83–9–35. He argues that "no loss/no gain" statutes, such as section 83–9–35, are intended to prevent "gaps" in coverage which could otherwise result when one group carrier is replaced by another. In support of his claim that the statute should be interpreted so as to avoid any gap in coverage, plaintiff relies principally on *Reagan Equipment Company v. Pan American Life Insurance*, 514 So.2d 253 (La.App.1987), and *Northeastern Life Insurance Co. of New York v. Gaston*, 470 S.W.2d 128 (Tex.Civ.App.1971). In *Reagan*, the court addressed a situation in which the employer, Reagan Equipment, upon securing replacement group coverage, agreed with the succeeding carrier that Reagan would reimburse the carrier for "gap" claims, including the medical expenses of an employee's dependent who had become hospitalized with cancer prior to the replacement and who had been covered under the prior carrier's plan. The issue involved was not a lack of coverage but rather who would bear the burden of the particular expenses involved. The employer had elected not to pay a supplemental premium for "gap" coverage and the succeeding carrier's eligibility requirements excluded "gap" coverage. The court concluded that the burden had been assumed by the employer, not the carrier. *Reagan Equipment*, 514 So.2d at 265–57.[10]

---

**9.** As stated, the Mississippi legislature elected not to adopt those provisions of the model regulation mandating a continuation of benefits by succeeding carriers. Neither did the legislature enact a portion of the model regulation requiring extension of benefits by group carriers which discontinue coverage. However, the court would observe that its conclusion is consistent with the insuring requirements established by the model regulation. Under the model regulation, the minimum level of benefits to be provided by the succeeding carrier is "the applicable level of benefits of the prior carrier's plan reduced by any benefits payable by the prior plan." In the case of an individual who was totally disabled, and in the case of a type of coverage for which the prior carrier was required to provide for a period of extended bene-

fits, the coverage which must be provided by the succeeding carrier is not required to be provided beyond "the end of any period of extension or accrued liability which is required by the prior carrier...."

**10.** Though Louisiana has a statute identical to section 83–9–35, that statute is not intended to require coverage for terminally ill persons who are not entitled to coverage under the terms of the replacement policy. Instead, Louisiana has enacted a separate statute to protect such persons:

 If a group health insurance policy is cancelled by the insurer and a covered member of such group is, prior to cancellation, diagnosed by a licensed physician to have a terminal illness,

In *Gaston*, the court concluded that the succeeding carrier was required to pay benefits where the insured had been eligible for coverage under the prior plan and the succeeding carrier had expressly agreed that persons insured at the time of replacement would neither gain nor lose benefits as a result of the replacement. Because of its express undertaking, the replacement insurer was required to assume coverage for all of the group's insureds, regardless of their insurability. In this case, as contrasted with both *Reagan Equipment* and *Gaston*, there is no evidence to indicate that Travelers intended to insure Mrs. Freeman or to provide any coverage other than in compliance with the terms of its policy.

In the court's opinion, the construction of the statute urged by plaintiff would allow one to gain coverage because of the replacement of a group policy that he would not otherwise have been entitled to receive if the prior coverage had not been replaced. That is not the intent of the statute and is, indeed, contrary to the statute, which limits the liability of the succeeding carrier to the amount of benefits that would have been received from the prior carrier if its coverage had not been replaced.

■ In addition to his reliance on the preexisting condition provision of the Mississippi statute as a basis for his claim for policy benefits for his wife, plaintiff also argues that section 83-9-35(2), mandating that the succeeding carrier give credit for "waiting periods," is somehow applicable in this case. He equates the "confinement" period referenced in the policy to a "waiting period" under the statute; he reasons that the hospital confinement provision re-

lated to time rather than eligibility and effectively imposed upon a confined eligible dependent a waiting period before coverage commenced. He submits that Mrs. Freeman was covered under the PSL plan,[11] and was therefore, upon replacement of the PSL policy by the Travelers policy, entitled to the satisfaction of the waiting period set forth in the Travelers policy. The court cannot accept this position. In the court's opinion, the requirement that a dependent will not be covered on the date his insurance is to become effective if he is confined in a hospital or other institution does not establish a waiting period within the meaning of the statute. The non-confinement clause does establish a waiting period inasmuch as it delays effectiveness of dependent coverage "until 30 days have elapsed during which such Dependent has not been so confined." But by their nature, neither the period of confinement nor the 30-day waiting period can logically be considered a "waiting period" for which credit could be given. Even if the dependent was hospitalized preceding the replacement coverage, so long as the dependent is not confined on the commencement date of the replacement policy, the confinement provision has no application and the 30-day waiting period is not implicated. And if the dependent is confined when the replacement policy is issued, the dependent must wait until thirty days after release before coverage becomes effective, even though she may have been confined prior to issuance of the replacement coverage. There simply can be no "credit" given for any prior period of confinement. All that is relevant is whether the dependent is confined on the date coverage would otherwise commence.[12]

and such member is not eligible for similar benefits under an individual policy or for similar benefits under any agreement of coverage for individuals in a group, whether insured or uninsured, or for similar benefits available to such person by reason of any state or federal law, except Medicare, then the insurer shall offer to such person a converted policy which provides a maximum payment for all eligible medical expenses incurred as a direct result of such illness, not to exceed one million dollars.

L.R.S. § 22:215. Thus, the responsibility for insuring such persons remains with the prior carrier.

11. Again, plaintiff's argument assumes that Mrs. Freeman was covered, or entitled to be covered, under the PSL plan. And, again, for the purpose of addressing this argument, the court will assume that she was.

12. An example of a proper application of this portion of the statute can be seen in the following. The Travelers plan, like many group plans administered by an employer, prescribes a spec-

In conclusion, consistent with the above discussion, Travelers was not required by law to extend insurance coverage to Mrs. Freeman. The statute does not mandate that a succeeding carrier provide coverage for an individual who is, under the policy provisions, not eligible for coverage. The determination of whether Mrs. Freeman was eligible for coverage was to be made in accordance with the provisions of the Travelers policy. Under the hospital confinement clause of the policy, Mrs. Freeman was not eligible for coverage.

Accordingly, it is ordered that the motion of Travelers for summary judgment is granted.

A separate judgment shall be entered pursuant to Federal Rule of Civil Procedure 58.

ORDERED.

ified and finite waiting period before an employee becomes eligible for coverage for either himself or his dependents: "All full-time employees are to be eligible for the insurance ... on the first day of the insurance month next following the date you complete 90 days of service." Under the statute, Travelers would be required to give an employee, who began employment less than 90 days before its policy became effective, credit for his prior service.