United States Court of Appeals

FOR THE EIGHTH CIRCUIT

<hr>

No. 96-1796

<hr>

Jeffrey W. Shelton,                        *
                                           *
      Appellant,                           *
                                           *   Appeal from the United States
        v.          *                      District Court for the Eastern
                                           *   District of Missouri.
Annuity Board of the Southern              *
Baptist Convention and Prudential          *
Service Bureau, Inc.,                      *
                                           *
      Appellees.                           *

<hr>

Submitted:  November 21, 1996

Filed:  March 24, 1997

<hr>

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,[1]
      District Judge.

<hr>

MORRIS SHEPPARD ARNOLD, Circuit Judge.

      Jeffrey W. Shelton appeals from the district court's order granting
the defendants' motion for summary judgment and dismissing his action.  Mr.
Shelton raises two issues on appeal: Whether he is eligible for coverage
under the terms of an insurance plan, and whether waiver and estoppel
principles apply to prevent the defendants from denying him coverage.  For
the reasons discussed below, we affirm the decision of the district court.[2]

<hr>

[1]The Honorable Andrew W. Bogue, United States District Judge
for the District of South Dakota, sitting by designation.

[2]The Honorable Stephen Nathaniel Limbaugh, United States
District Judge for the Eastern District of Missouri.

Mr. Shelton was employed by the Immanuel Baptist Church in Cobden, Illinois, from October, 1985, through September, 1986. The church is affiliated with the Southern Baptist Convention, whose Annuity Board provided a health insurance plan. Aetna Insurance Company originally administered the plan and provided the coverage under it. On January 1, 1991, the plan became a self-insured one administered by Prudential Insurance Company of America. Mr. Shelton joined the plan in November, 1985, shortly after becoming a church employee; he left that employ in September, 1986. Since 1990, he has incurred substantial costs associated with the treatment of Lyme disease, and in this suit he sought reimbursement for those costs from the Annuity Board and from Prudential under the plan. The parties concede that booklets published by the Annuity Board in conjunction with Aetna and Prudential set forth the plan's contractual terms.

## I.

The district court ruled that Texas law ought to be applied to this case under Missouri choice-of-law principles, a holding with which the parties have no quarrel. Texas courts interpret insurance contracts in the same manner as other contracts. They interpret all portions of an insurance contract collectively, attributing to the contract an interpretation that will achieve, to the largest degree possible, the aims of the parties to it. *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 545 (Tex. App. 1990). When an insurance contract is ambiguous, the ambiguity is construed in favor of the insured. Id.

### A.

Mr. Shelton initially argues that the plan's terms cover him, and we first address his claim with respect to the coverage as it existed when Aetna administered the plan. The plan provided that to be eligible for coverage, one had to be a salaried employee of a Southern Baptist church and work at least 20 hours per week. The plan also stated that coverage terminated when eligibility ceased. The plan therefore apparently covered Mr. Shelton only during his employment, or from October, 1985, through September, 1986.

The plan as administered by Aetna also provided, however, that "[i]f an individual is totally disabled when his Comprehensive Medical Expense Coverage ceases[,] benefits will continue to be available to him during the disability for up to 12 months."  The Aetna plan defined as "totally disabled" anyone who, because of injury or disease, had stopped working and had become otherwise ineligible for medical coverage.  Since Mr. Shelton was "totally disabled" when he stopped working, he would have been eligible for extended coverage only until September, 1987, long before he incurred the costs at issue in this case.

Mr. Shelton contends nevertheless that he was eligible for coverage because the Aetna plan provided that ceasing "active work will be considered to be immediate termination of employment, except that if you are absent from work because of sickness [or] injury, ... employment **may be considered to continue** for the purposes of some of the coverages up to the limits specified in the contract" (emphasis added).  Mr. Shelton argues that because he left work due to a disability, we should apply the exception contained in the quoted excerpt.

The plan states that "employment may be considered to continue," without stating explicitly who makes this decision.  Mr. Shelton asserts that the decision rests with him.  Given the context of this phrase within the paragraph in which it appears and within the plan as a whole, we conclude that the plan's drafters could logically have assigned this responsibility to Aetna, the Annuity Board, or the individual church that employed Mr. Shelton.  The provision, however, does not reasonably lend itself to the interpretation that the responsibility rests with Mr. Shelton.  *Chen v. Metro. Ins. & Annuity Co.*, 907 F.2d 566, 569 (5th Cir. 1990) (a construction urged by an insured must be adopted if and only if it is reasonable).  The Aetna provisions thus did not cover Mr. Shelton's post-1987 medical expenses.

-3-

**B.**

Eligibility under the Prudential administration paralleled that provided by Aetna. To be eligible for coverage immediately, one had to have "regularly work[ed] for a Southern Baptist church or related organization at least 20 hours per week" as of January 1, 1991. Mr. Shelton, as we have noted, was not employed as of that date. The plan also provided, however, that "[c]overage will be delayed if you do not meet the Active Work Requirement on the day your coverage would otherwise begin. Instead, it will begin on the first day you meet the Active Work Requirement and the other requirements for the coverage." The term "Active Work Requirement" is defined as "[a] requirement that you be actively at work for an employer affiliated with the Southern Baptist Convention, on full time at the Employer's place of business, or at any other place that the Employer's business requires you to go." Since Mr. Shelton has not worked for a Southern Baptist organization at any time since January 1, 1991, it is manifest that Mr. Shelton was not eligible for coverage under the terms of the plan as administered by Prudential.

Mr. Shelton resists this conclusion, however, by focusing on the following provision contained in the relevant booklet published by the Annuity Board: "Your eligibility will end when you are no longer a full-time Participant actively at work for the Employer and, under the terms of the Plan, the **Purchaser** may consider you as ***still employed*** in the Covered Classes during certain types of absences from full-time work. This is subject to any time limits or other conditions stated in the Plan" (emphasis added). Mr. Shelton asserts that this provision is ambiguous and that the ambiguity should be resolved in his favor. *See Southern Life and Health Ins. Co. v. Simon,* 416 S.W.2d 793, 795 (Tex. 1967). He maintains that he could be the "Purchaser" referred to in this provision because he paid the premiums to the plan's administrator and continued to do so until January 1, 1994, despite the fact that his employment terminated in 1986. Mr. Shelton, in effect, asks us to allow him to decide for himself whether he is indeed eligible for coverage, a result that no reasonable person could have

anticipated from the language of the plan or the circumstances in which it was created.

The term "Purchaser," moreover, is not subject to more than one interpretation. The provision at issue also contains the term "Participant," which is defined as "[a] person employed by a Southern Baptist church or related organization." This clearly refers to Mr. Shelton. Had the plan's drafters intended to give to the word "Purchaser" the meaning that Mr. Shelton ascribes to it, the phrase under consideration would have used the term "Participant" instead of "Purchaser." The appearance of two different nouns in the same sentence gives rise to the presumption that they have different referents, with "Participant" referring to church employees and "Purchaser" referring to something else entirely.

Additionally, had the drafters intended to grant Mr. Shelton the power he claims, it would have been more natural for them to use the term "you" instead of "Purchaser," given their use of "you" twice in the provision. "You," as used in the provision and throughout the plan, so obviously refers to Mr. Shelton that a definition of the term is unnecessary. We note, nevertheless, that the plan defines "you" as "[a] covered Participant," demonstrating yet again that "Participant" refers to Mr. Shelton. The definition of "you," moreover, includes only "Participant" and not "Purchaser." Because "you" and "Participant" refer to Mr. Shelton and cannot be synonymous with "Purchaser," "Purchaser" must refer to someone other than Mr. Shelton. We think it is also plain that "Purchaser" does not refer to churches affiliated with the Southern Baptist Convention or to the Convention itself. The plan defines "The Employer" as "[c]ollectively, all employers included under the Plan." "The Employer" thus includes those churches affiliated with the Southern Baptist Convention and the Convention itself.

"Purchaser" must therefore refer to the Annuity Board. The relevant provision now reads, "[The Annuity Board] may consider you as still employed in the Covered Classes during certain types of

-5-

absences from full-time work."  This is the very
person                                                                     e
plan.  "[T]he court in construing a policy deter
of                                                                         n
parlance'                               understanding of the term.'"  *United
      Ins. Co. v. Boyer*                                           *American
                    r*, 5 S.W.2d 252, 254 (Tex. App. 1928).  Furthermore,
    interpretation is consistent with the drafters' use of "Purchaser,"
                and  "you"  in  the  paragraph  describing  "limits  o
assignments."                                                              s
use of "Policyholder," which Aetna defines as the Annuity Board.
                                                                      plan's
coverage provisions.


    Mr. Shelton asserts in the alternative that the plan is estopped from
      g  him  coverage  because  it  accepted  his  premium  payments,  wa
allegedly                                                                  d
him that he would be covered.


                                                                      er and
estoppel                                                                   s
under the terms of the policy.'"                *at'l Mut. Cas. Ins. Co. v.*
*Kitty    k Airways, Inc.*, 964 F.2d 478, 480-81 (5th Cir. 1992) (__r
curiam  quoting       , 791 S.W.2d at 550.  We have already decided that
    Shelton was not covered by the terms of the contract.  "[W]aiver and
          cannot enlarge the risks covered by a policy and cannot be used
   create a new and different contract with respect to the risk covered an
the                       *Minnesota Mut. Life Ins. Co. v. Morse*, 487 S.W.2
317, 320 (Tex. 1972).  "'[E]stoppel cannot be used to change, rewrite and
                                             *Enserch Corp. v. Shand Morahan*
      952 F.2d 1485, 1498 n.24 (5th Cir. 1992), quoting
*v. Moriarty*, 746 S.W.2d 249,

252 (Tex. App. 1987) (emphasis in *Enserch Corp.* deleted). Furthermore, where a policy extends coverage to a specified group (such as employees of churches affiliated with the Annuity Board), "the requirement that the insured be employed with or have membership in the group at the time the loss occurs is generally held not subject to the doctrines of waiver and estoppel." W. C. Crais III, Annotation, *Comment Note: Doctrine of Estoppel or Waiver as Available to Bring within Coverage of Insurance Policy Risks Not Covered by Its Terms or Expressly Excluded Therefrom,* 1 A.L.R.3d 1139, 1155 (1965).

Mr. Shelton relies on several cases that he believes support the application of waiver and estoppel principles to this case, a reliance that is entirely misplaced. Of these cases, only two are potentially apposite, and both support a decision favoring the defendants. These cases, *Northeastern Life Ins. Co. v. Gaston*, 470 S.W.2d 128 (Tex. App. 1971), and *Travelers Indem. Co. v. Holman*, 330 F.2d 142 (5th Cir. 1964), used waiver and estoppel to preserve insurance coverage already in existence. In both cases the courts acted to protect binders. "'Waiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy.'" *Gaston*, 470 S.W.2d at 132, quoting *Great Am. Reserve Ins. Co. v. Mitchell*, 335 S.W.2d 707, 708 (Tex. App. 1960). Our case does not involve the possible forfeiture of a contract; it involves an attempt to "'enlarge the risks covered by a policy.'" Id. Since Mr. Shelton does not purport to have a binder from the defendants, any application of waiver and estoppel principles to force the defendants to cover him will result in an impermissible enlargement of coverage beyond that which the insurance contract originally provided.

As Mr. Shelton states in his brief, it "has been the settled law of Texas" that "waiver and estoppel cannot create a new and different contract with respect to risk covered by the policy." We disagree with Mr. Shelton's attempt to carve an exception for himself from this rule.

## III.

Because M

and because Mr. Shelton cannot create coverage via waiver and estoppel, we

A true copy.

Attest: