David **CRAFT** and Barbara Craft, Plaintiffs,

v.

**NORTHBROOK LIFE INSURANCE COMPANY and Medical Plans, Incorporated, Defendants.**

Civ. A. No. J91–0368(L).

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 25, 1993.

Eugene Tullos, Raleigh, MS, for plaintiffs.

Richard Lawrence, Watkins & Eager, Billy W. Keyes, Roy Lidell, Wells, Wells, Marble & Hurst, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs David and Barbara Craft brought this action seeking payment of benefits claimed to be due under separate employee benefit plans established by their respective employers on account of medical expenses incurred on behalf of their son, Justin Craft. In addition to their claims for breach of contract, plaintiffs asserted state law claims of fraud and for defendants' alleged breaches of fiduciary duties and duties of good faith and fair dealing. Plaintiffs demanded actual damages in the amount of $120,000, together with $250,000 in extra-contractual and punitive damages. Defendants Northbrook Life Insurance Company (Northbrook) and Medical Plans, Inc. have now separately moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court has considered the memoranda of authorities together with attachments submitted by the parties and concludes that defendants' motions are well taken and should be granted.

### FACTS

On December 14, 1983, Barbara Craft gave birth to a son, Justin Craft. Following his birth, Justin, who was born prematurely, remained continuously hospitalized for approximately nine months, until he was discharged on September 16, 1984.

#### Barbara Craft's Coverage

At the time of his birth, Justin's mother, Barbara Craft, participated in an employee benefit plan offered by her employer, Southern Apparel. The plan was a self-funded plan for which Southern Apparel had reinsurance with Harbor Insurance Company for individual claims exceeding $10,000. Medical Plans served as the supervisor or administrator of the plan pursuant to an agreement with Southern Apparel dated October 1, 1983, under which Medical Plans was responsible for performing such duties as were delegated to it by Southern Apparel, including the processing and payment of claims owed by Southern Apparel

for benefits due under the plan. Consistent with its duties and in accordance with the dependent coverage provided by the plan for Justin Craft, Medical Plans authorized payment for claims submitted on behalf of Justin from his birth through March 29, 1985. During March 1985, however, Southern Apparel made a decision to terminate its self-funded plan and thus applied for and secured group insurance coverage through Northbrook. Effective April 1, 1985, Southern Apparel cancelled its self-funded coverage and terminated the services of Medical Plans as plan supervisor and administrator, and Northbrook became the insurer of Southern Apparel's group plan. Thereafter, no benefits were authorized to be paid nor paid by Medical Plans or Southern Apparel on behalf of Justin Craft.

On April 1, 1985, employees who had participated in Southern Apparel's self-funded plan, including Barbara Craft, were provided a certificate of insurance coverage under Northbrook's policy. This document outlined the benefits available and the terms of coverage. With respect to the effective date of dependent coverage, Northbrook's policy provided:

> Your dependents, other than a newborn child, cannot become insured if they are Totally Disabled. In this case, the dependents will become insured on the first of the month coinciding with or next following the date they are no longer Totally Disabled.

The policy defined "totally disabled" or "total disability" as:

> An Injury or Sickness that results in:
>    Active Employees being unable to perform the main duties of any occupation or business; or
>    Any other insured persons being unable to engage in the normal activities, duties and responsibilities of healthy people of the same age and sex.

According to Northbrook, Justin Craft first became eligible for coverage, according to these policy provisions, on October 1, 1985, the first day of the month following the date when he was no longer "totally disabled." Northbrook therefore paid plaintiffs' claims for Justin's medical expenses from and after October 1, 1985. It made no payments, however, for medical expenses incurred for Justin prior to October 1, 1985.

### David Craft's Coverage

On September 18, 1984, David Craft became employed by Klinger Electric Company and remained so employed at the time of Justin's birth. Like Southern Apparel, Klinger Electric maintained an employee benefit plan for its employees which was self-funded by Klinger Electric, with reinsurance for individual claims exceeding $10,000. Medical Plans acted as the supervisor or administrator of Klinger Electric's employee benefit plan pursuant to a contract dated March 1, 1981 and, as with the Southern Apparel plan, Medical Plans was responsible for performing on behalf of Klinger Electric those duties delegated to it by this agreement, including the processing and payment of covered claims.

Under the terms of Klinger Electric's plan, employees were allowed to participate after having completed three months' employment with the company. On December 13, 1984, five days prior to the date he was to become eligible for coverage under the plan, David Craft signed an enrollment form indicating that he wanted to participate in his employer's employee benefit plan. The following day, Justin Craft was born. By letter dated January 25, 1985, Medical Plans informed Klinger Electric, which in turn advised David Craft, that Justin was not eligible for dependent coverage under the plan from the time of his birth since David Craft was not himself eligible for coverage until December 18, 1984, the date on which he had completed three months' employment. According to Medical Plans' explanation, when David Craft thereafter became eligible to participate in the plan, Justin Craft was totally disabled and did not thereafter became eligible for coverage under the plan by reason of the following policy provision:

> **EFFECTIVE DATE OF COVERAGE—**
> Employee—Employee coverage becomes effective on the first day of activity at work coincident with or immediately

following completion of a 3 month waiting period.

Dependent—Coverage for your dependents will become effective on the same date as your own if you apply for dependent coverage when you join this plan. If you are covered as a single employee and later acquire a dependent, you may enroll your dependent in this plan within 31 days.

Any dependent who is totally disabled on the date he would otherwise become eligible for benefits shall not become eligible until the earlier of:

(1) The date immediately following his subsequent completion of thirty-one (31) consecutive days without treatment after his period of disability, or

(2) The date twelve (12) months following the date he would have been eligible if he were not totally disabled.

David Craft was advised in January 1985 that coverage for Justin was declined until such time as Justin met the requirements set forth in items (1) and (2).

## PLAINTIFFS' CLAIMS

Plaintiffs do not dispute that their claims for medical expenses incurred prior to April 1, 1985 were processed by Medical Plans and paid under Barbara Craft's dependent coverage through Southern Apparel's employee benefit plan, and they apparently concede that Northbrook paid their claims for expenses incurred after October 1, 1985. What they seek to recover in this action is the medical and hospitalization expenses incurred for Justin from April 1 to October 1, 1985 which they contend should have been paid under the subject employee benefit plans.[1]

## ERISA

■ In support of their motions for summary judgment, defendants assert that each of the plans that are at issue in this lawsuit is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and that each of plaintiffs' state law claims is thus preempted by virtue of ERISA's exclusivity provision, 29 U.S.C. § 1144.[2] Despite plaintiff's protestations to the contrary, it is apparent that the plans are, in fact, employee welfare benefit plans governed by ERISA. The term "employee benefit plan" includes an "employee welfare benefit plan" which is defined at 29 U.S.C. § 1002(1) as:

any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

Section 1003(a) further provides that, with exceptions not applicable here, the provisions of ERISA apply to "any employee benefit plan if it is established or maintained ... by an employer engaged in commerce or in any industry or activity affecting commerce."

The Fifth Circuit has observed that an ERISA plan has been established if "from the surrounding circumstances, a reasonable person can ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 979 (5th Cir.1991) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (*en banc*)). *See also Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990); *Foxworth v. Durham Life Ins. Co.*, 745 F.Supp. 1227, 1230

---

1. Though plaintiffs' complaint is not clear on this point, alleging only that defendants have "failed, refused, and neglected to pay the full benefits to which the Plaintiffs are entitled," both David and Barbara Craft testified by deposition that the only time during which coverage was not provided for Justin was the period from April 1 to October 1, 1985.

2. This case was originally filed in the Circuit Court of Smith County, Mississippi, but was timely removed to this court by defendants on the basis that plaintiffs' claims are governed by ERISA and subject to jurisdiction in the federal courts.

(S.D.Miss.1990) (quoting *Donovan*). The plans involved in the case at bar satisfy these requirements. "A reasonable person would easily conclude that the intended benefits were [medical, surgical or hospital care or benefits], that the beneficiaries were [Southern Apparel's and Klinger Electric's] employees and their dependents, that the premiums were paid by the employees, [and in the case of the Northbrook policy, by employee and employer contributions], and that the benefits would be received by submitting claims to the ... employee benefits administrator, who would [process and authorize payment of the claim]" or, in the case of the Northbrook coverage, by submitting claims to Northbrook as provided in the certificate of insurance. *See Hansen*, 940 F.2d at 977. Thus, a "plan" exists.

The question whether the "plan" is an ERISA plan requires the court to "[focus] on the employer ... and [its] involvement with the administration of the plan," *id.* at 978, for an employer who "does no more than purchase insurance for [its] employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims ... has not established an ERISA plan," *id.* (citing *Kidder v. H & B Marine, Inc.*, 932 F.2d 347 (5th Cir.1991)). In the court's opinion, the uncontroverted evidence in this case demonstrates convincingly that Klinger Electric and Southern Apparel were employers "engaged in commerce" and that the plans at issue were established and maintained by those respective employers with the intent to and for the purpose of providing for their employees medical benefits in the event of sickness or accident.[3] Both employers were responsible for the

creation of their self-funded plans, participated in the administration of those plans and were responsible for payment of claims under the plans. Regarding the Northbrook coverage secured by Southern Apparel, the employer paid a portion of the premium for its employees' coverage and assisted employees in the submission of claims. The level of employer participation in these plans dictates the conclusion that they are ERISA plans.

### ERISA Preemption

■ ERISA preempts all state laws which "relate to any employee benefit plan" except those which regulate insurance, banking or securities, 29 U.S.C. § 1144, or which "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). *See also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). And, "a state law 'relate[s] to' a benefit plan ... if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899. It is evident in the case at bar that each of plaintiffs' state law claims directly "relates to" the subject employee benefit plans. The claims are thus preempted by ERISA. *See Brock v. Primedica, Inc.*, 904 F.2d 295, 297 (5th Cir.1990) (state law claims against insurer and plan administrator for mental anguish, emotional distress and financial hardship preempted by ERISA); *Lee v. E.I. Du Pont de Nemours & Co.*, 894 F.2d 755, 757 (5th Cir.1990) (state law claims against employer for misrepresentation and fraud preempted by ERISA); *Goodman v. S & A*

---

**3.** In response to defendants' motions on this point, plaintiffs argue that these plans cannot be governed by ERISA because the contract entered into between Southern Apparel and Medical Plans plainly states that "[t]his contract is delivered in, and is governed by, the laws of the state of delivery." Plaintiffs reason that it is evident from this provision that neither of these parties "had any desire to make any part of this contract or coverage subject to [ERISA]." Plaintiffs' position is patently without merit. The language cited by plaintiffs does not appear in any of the employee welfare benefit plans at

issue; rather, it is included only in the contract establishing Medical Plans as the plan supervisor or administrator. Indeed, the terms of Southern Apparel's employee benefit plan, as well as the Klinger Electric plan and Northbrook's policy, provide explicitly that the plan is governed by ERISA. But even were the quoted language included in the plans at issue, such language would be unenforceable as the parties obviously may not avoid ERISA or its preemptive effect by a simple contractual provision to that effect.

*Restaurant Corp.,* 756 F.Supp. 966, 967–71 (S.D.Miss.1990) (state law claim for negligent handling of enrollment form preempted by ERISA). Plaintiffs' claims therefore must be viewed as arising under ERISA.[4]

## MEDICAL PLANS' MOTION FOR SUMMARY JUDGMENT

■ ERISA provides a right of action by a participant or beneficiary "to recover benefits due to him under the terms of his plan.…" 29 U.S.C. § 1132(a)(1)(B). In this case, plaintiffs contend that Medical Plans wrongly refused to authorize and/or pay benefits under Southern Apparel's and Klinger Electric's benefit plans for expenses incurred in connection with Justin Craft's hospitalization and medical treatment. Medical Plans maintains that it is entitled to summary judgment insofar as the payment of benefits is sought under these plans since its function as supervisor or administrator of the plans was merely to process claims; it was not responsible or individually liable for the payment of benefits under either plan. However, the private right of action provided by § 1132 is not limited to actions "to recover benefits." Section 1132 provides a broader array of relief:

> A civil action may be brought—
> (1) by a participant or beneficiary—
>
> .    .    .    .    .
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter of the terms of the plan, or (B) to obtain other appropriate equitable relief

(i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiffs' claims against Medical Plans need not necessarily be viewed as seeking the recovery of "benefits" *per se.* Rather, their claims against Medical Plans can reasonably be viewed as demanding damages caused by Medical Plans' denial of benefits in violation of the terms of the plans which damages, if recoverable, would consist of the benefits they would have received had Medical Plans adhered to the terms of these plans in making its benefit determination. *Cf. Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989). In other words, they seek to enforce their alleged rights under the terms of the plans. So viewed, the court is unable to conclude that Medical Plans is not a proper defendant.

■ Medical Plans next contends that to the extent that plaintiffs' claims are asserted against it as a fiduciary, their claims are barred by the three-year statute of limitations of 29 U.S.C. § 1113, which provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action, which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

---

**4.** *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (complaint, though purporting to raise only state law causes of action, was necessarily regarded as arising under federal law inasmuch as § 502(a)(2)(B) of ERISA completely displaced state law; accordingly, plaintiff's state law claims were recharacterized as arising under federal law); *Degan v. Ford Motor Co.,* 869 F.2d 889, 893 (5th Cir.1989) (ERISA's preemptive and civil enforcement provisions operate to "recharacterize" such claims into actions arising under federal law).

Obviously, if the three-year limitations period were applicable, plaintiffs' complaint against the defendants, which was filed June 12, 1991, would be time-barred as all events giving rise to their claims in this case occurred in 1985. However, it has been held that § 1113 does not provide the applicable statute of limitations for a fiduciary's breaches relating to its plan administration functions, including benefit denials or determinations. Rather, the three-year statute of limitations of § 1113 applies only to actions brought under that part of ERISA imposing specific obligations on plan fiduciaries, applying, as it does, only to actions "brought under [that] subchapter."[5] *See Kennedy v. Electricians Pension Plan, IBEW No. 995*, 954 F.2d 1116, 1120 (5th Cir.1992) (quoting *Johnson v. State Mut. Life Assur. Co. of America*, 942 F.2d 1260, 1262 (8th Cir.1991)) ("Congress limited the application of § 1113 'to suits claiming breach of an ERISA trustee's fiduciary duty "under this part," which does not include beneficiary suits under § 1132(a)(1)(B).' "); *Wright v. Southwestern Bell Telephone Co.*, 925 F.2d 1288 (10th Cir.1991) (complaint charging denial of disability benefits focused on employer's administration of plan and was thus not governed by statute of limitations applicable to actions arising out of portions of

ERISA addressing fiduciary responsibilities); *Gray v. Greyhound Retirement and Disability Trust*, 730 F.Supp. 415 (M.D.Fla.1990) (statute of limitations applicable to actions commenced with respect to fiduciary's breach of responsibility did not apply to claim seeking recalculation of pension benefits based on improper reporting of employee's salary); *Starr v. JCI Data Processing, Inc.*, 767 F.Supp. 633 (D.N.J. 1991) (statute of limitations established under ERISA applied only to actions brought under fiduciary responsibility provisions of ERISA). Plaintiffs' complaint in the case at bar charges only that defendants breached their fiduciary duties by failing and refusing to pay or authorize the payment of benefits which they claim were due them under the terms of the subject plans. There is no allegation that defendants committed any other breach of their responsibilities as fiduciaries.[6] Clearly, therefore, the limitations period established by § 1113 is inapplicable to their claims.[7]

Since § 1113 is inapplicable, and since ERISA does not otherwise provide a statute of limitations for actions brought to enforce plan rights, the court must look to state law for the statute of limitations most analogous to the cause of action raised. *See Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir.1992); *see also Kennedy*, 954

---

**5.** For example, ERISA specifically identifies certain prohibited transactions between the plan and parties in interest and the plan and a fiduciary, 29 U.S.C. § 1106, and places limits on the plan's acquisition and holding of employer securities and employer real property, 29 U.S.C. § 1107.

**6.** Section 409 of ERISA provides that a fiduciary with respect to a plan who breaches any of the specific fiduciary responsibilities, obligations, or duties imposed upon it by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from such breach...." The Supreme Court has held that § 1109 does not provide for recovery by individual plan participants or beneficiaries but instead authorizes relief only for the plan itself. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). However, a plan participant's or beneficiary's right to bring a private action against plan fiduciaries for failing to comply with their statutory duties is specifically recognized by § 1132. *See* 29 U.S.C. § 1132(a)(2) (civil action may be brought by a participant on beneficiary for appropriate relief

under § 1109); *cf. Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321 (5th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992) ("[w]hen a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)....").

**7.** In its motion, Medical Plans alleged first that it was not liable as to plaintiffs' claims to recover benefits. It argued next that plaintiffs' additional claim for breach of fiduciary duties was time-barred by the three-year limitations period of § 1113. As discussed *supra*, however, the court has concluded that Medical Plans is a proper defendant with respect to a claim by plaintiffs for the enforcement of the terms of the plans. And, since plaintiffs' claim against Medical Plans as a fiduciary is simply that this fiduciary wrongly failed to accord them their rights under the terms of the plan, that claim likewise falls under the auspices of § 1132 and is subject to the limitations period which is applicable to claims brought under that section.

**472**

F.2d at 1120. In *Hogan*, the court determined that since the plaintiffs' claim charging wrongful benefit denial involved interpretation of the plan contract, it was measured by the Texas limitations statute governing suits sounding in contract. *Hogan*, 969 F.2d at 145. Indeed, courts have generally applied the state statute of limitations for actions on written contracts to claims under § 1132. *See, e.g., Wright*, 925 F.2d at 1291 (limitations period applicable to complaint charging denial of disability benefits was state limitations period for actions on written contracts); *Miles v. New York Teamsters Conf. Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.), ·*cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Consequently, the court concludes that plaintiffs' claims in the case *sub judice* are governed by the six-year statute of limitations of Miss.Code Ann. § 15–1–49 which applied at the time plaintiffs' claims accrued.[8]

### The Klinger Electric Plan

An ERISA cause of action accrues, and the statute of limitations begins to run, when a request for benefits is denied. *Hogan*, 969 F.2d at 145; *Simmons v. Willcox*, 911 F.2d 1077, 1981 (5th Cir. 1990). Plaintiffs sought to obtain payment under the Klinger Electric plan from the time of Justin's birth and were advised in January 1985 that coverage had been declined for Justin under that plan. They were contemporaneously advised of the reasons that coverage was refused. As of that date, David Craft's claim for benefits on behalf of Justin under the Klinger Electric Plan was clearly and unequivocally denied.[9] Yet plaintiffs did not file this action until June 12, 1991, over six years later. It must be concluded, therefore, that plaintiffs' claims relating to the Klinger Electric plan are time-barred.

Even were the court to conclude that plaintiffs' claims relating to the Klinger Electric plan were not time-barred, summary judgment would nevertheless be in order as to Medical Plans' alleged liability with respect to that plan for the reason that benefits were properly denied under the terms of the plan.[10] David Craft conceded in his deposition that Justin Craft was "totally disabled" from the time of his birth until his release from the hospital on September 16, 1985. According to the terms of the plan, this "total disability" rendered Justin Craft ineligible for benefits as of the date that David Craft himself became eligible for coverage and sought coverage for Justin (December 18, 1984); thus, under the further unambiguous language of the plan, Justin Craft did not

8. Section 15–1–49 is Mississippi's "catch-all" statute of limitations, which applies to "[a]ll actions for which no other period of limitation is prescribed...." At the time plaintiffs' claims arose, that section prescribed a six-year limitations period. It has since been amended to provide a three-year limitations period.

9. The court notes that there is no indication in the record that the Crafts pursued this matter with Klinger Electric or with Medical Plans following David Craft's being advised of the denial of coverage under the plan. That is, while David Craft testified by deposition that he thought benefits should have been paid under the Klinger Electric plan, there is nothing to suggest that any claims were presented for payment under that plan after January 1985 or that any affirmative action was taken by the Crafts to secure payment under that plan.

10. A plan *administrator's factual determinations* respecting a denial of benefits which is challenged under § 1132 is reviewed under an abuse of discretion standard. *Pierre v. Connecticut*

*General Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). But an administrator's interpretation of the terms of the plan in connection with the denial of benefits is reviewed under a *de novo* standard unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). If the plan administrator has such discretionary authority, then a reviewing court applies an abuse of discretion standard. *Id.; see also Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637, *reh'g denied and opinion clarified*, 979 F.2d 1013 (5th Cir.1992). In the case at bar, there apparently was no real dispute between the parties as to the pertinent facts. The questions involved interpretation and application of the terms of the plan to the facts. As there is no indication in the plan documents that Medical Plans or Northbrook was given "discretionary authority to determine eligibility," the court considers their benefit determinations under a *de novo* standard.

become eligible for benefits until he completed thirty-one consecutive days without treatment after his period of disability, or twelve months after the date he would have been eligible for coverage if he were not totally disabled. It is clear that Justin Craft was not eligible for coverage under Klinger Electric's plan at any time prior to October 1, 1985.[11] Summary judgment in favor of Medical Plans is thus in order as to plaintiffs' claims for benefits under the Klinger Electric plan.[12]

### The Southern Apparel Plan

Having considered defendants' motions as they relate to the coverage afforded Barbara Craft and her dependents by virtue of her participation in the employee benefit plans maintained by Southern Apparel, the court similarly concludes that summary judgment is appropriate for Medical Plans.

A guiding principle in the court's analysis of the issues pertaining to Barbara Craft's coverage is that ERISA welfare benefit plans, unlike pension plans, are not subject to the vesting and participation provisions of ERISA. *See* 29 U.S.C. § 1051; *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990) ("Congress chose not to impose vesting requirements on welfare benefit plans...."); *Martin v. Prudential Ins. Co.*, 776 F.Supp. 1172, 1177 (S.D.Miss.1991) ("Congress expressly exempted employee welfare benefit plans from the vesting, participation and funding requirements of ERISA"). Thus, while an insurer may provide in its contract for the vesting of welfare benefits, it is not required to do so by ERISA. *See Martin*, 776 F.Supp. at 1178; *Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 603 (7th Cir.1989) ("the parties are free to subject those welfare benefits to vesting requirements not provided by ERISA, or they may reserve the power to terminate such plans.").

A review of Southern Apparel's plan documents contains nothing which would tend to suggest that any benefits would vest under the plan, and in fact, the contrary appears. The Southern Apparel plan explicitly provided that a covered employee's coverage and his or her dependents' coverage under the plan would end the date the employee's employment terminated or the date the plan terminated, whichever occurred earlier. Accordingly, plaintiffs acquired no vested right to benefits under Southern Apparel's self-funded plan. Southern Apparel was free to terminate its self-funded plan at any time, subject only to the requirement that it ensure that Barbara Craft and her covered dependent, Justin Craft, be afforded the benefits to which they were entitled under its plan. *See Rinard v. Eastern Co.*, 769 F.Supp. 1416, 1427 (S.D.Ohio 1991), *rev'd on other grounds*, 978 F.2d 265 (6th Cir.1992) (employer did not breach fiduciary duty in deciding to terminate plan but was "still ... responsible for ensuring that any liability for benefits due to participants was discharged in accordance with the terms of the plan"). Regarding the benefits that were due upon termination of the plan, Southern Apparel's plan provided for a three-month extension of medical care benefits, as follows:

> If you, or one of your dependents, are totally disabled when Medical Coverage for you or the dependent ends, and if the

---

**11.** Medical Plans asserts that Justin never became eligible for coverage under this plan. It appears that under the provisions of the plan, Justin should have become eligible for coverage at least by December 18, 1985, twelve months after the time he would otherwise have been eligible for coverage had it not been for his total disability. He may have become eligible for coverage before that date, if he had experienced 31 consecutive days without treatment, but it is unclear whether complete information has been provided with respect to the dates of his treatment following his discharge from the hospital.

The court, though, need not address the question of when Justin would have become eligible for such coverage as plaintiffs' complaint in this action relates only to coverage before October 1, 1985.

**12.** The court would observe that plaintiffs have not suggested in their response to defendants' motions any basis upon which to conclude that Justin Craft became covered under the Klinger Electric plan at any time prior to October 1, 1985.

474

coverage did not end because you failed to make any required contribution for the cost of the coverage while remaining eligible for it, you will be entitled to benefits on account of expenses incurred during the continuance of that disability in the same manner as if such Medical Care Coverage had not ended, but no benefits will be paid for expenses incurred:

(a) on account of any injury of [sic] sickness other than the injury or sickness causing the total disability which existed when the Medical Care Insurance ended, or

(b) after the date three months after the Medical Care Coverage for the disabled person ended.

Though it appears from the record in this cause that benefits were not, in fact, provided to Barbara Craft in accordance with this provision, the court nevertheless concludes that plaintiffs' claim against Medical Plans for any alleged failure to comply with these terms of the plan must fail.

Medical Plans asserts in its motion that when Southern Apparel terminated its self-funded plan effective April 1, 1985, Southern Apparel likewise terminated its contract with Medical Plans and that Medical Plans did not thereafter function in any capacity relative to Southern Apparel or the plan. Consequently, it devolved upon Southern Apparel to perform any outstanding duties relating to the plan.[13] More specifically, Medical Plans argues that effective April 1, 1985, it was not authorized to process or pay any claims incurred under the Southern Apparel benefit plan, and

suggests, in fact, that after the plan was terminated, funds were not made available by Southern Apparel for the payment of any further claims. In short, its duties were extinguished by the termination of the plan since there was no longer a plan to be administered.

■ Plaintiffs have not disputed Medical Plans' assertion that from and after April 1, it lacked authority to take any action with reference to the terminated Southern Apparel plan, nor have they pointed to any specific duty on the part of Medical Plans (as contrasted with Southern Apparel) to provide for or ensure the payment of benefits beyond the effective dates of the plan. The court need not determine, though, whether Medical Plans was under some duty in this regard since in the court's opinion, irrespective of whether Medical Plans had a continuing duty, fiduciary or otherwise, with respect to the provision of extended benefits, plaintiffs' claims against Medical Plans for such benefits were not timely filed.[14]

The proof in the case sub judice demonstrates conclusively that the plaintiffs were aware of Barbara and Justin Craft's right to additional benefits under the extension of benefits provision in the Southern Apparel plan. David Craft testified, in fact, that he had discussed this provision with representatives of Southern Apparel and Medical Plans when he became aware in March 1985 that Southern Apparel's self-funded plan was to be terminated. His efforts to secure payment, however, were unavailing. As the plaintiffs did not file this suit for over six years following this

13. The court notes that according to David Craft's deposition testimony, Southern Apparel filed for bankruptcy protection during May or June 1991 and thus was not made a defendant in this action.

14. ERISA imposes on a plan fiduciary the obligation to
discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ... with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims....

29 U.S.C. § 1104. In addition, ERISA defines the circumstances in which one plan fiduciary shall be liable for a breach of fiduciary responsibility by another plan fiduciary, including where the fiduciary (1) knowingly participated in the breach by another fiduciary, (2) by its fiduciary omissions enabled such other fiduciary to commit the breach, or (3) has knowledge of the breach of the other fiduciary yet fails to make reasonable efforts to remedy the breach. Thus, it is possible that even if it had no independent obligation to pay plaintiffs' claims for extended benefits, Medical Plans could nevertheless incur liability for Southern Apparel's failure to afford plaintiffs those benefits.

refusal to pay benefits under the extension of benefits provision, their suit challenging this failure must be considered untimely.[15]

## NORTHBROOK'S MOTION FOR SUMMARY JUDGMENT

■■■■ Northbrook asserts that it is entitled to summary judgment because under the clear terms of its policy, Justin Craft was not eligible for benefits until October 1, 1985.[16] Application of the provisions of Northbrook's policy dictates precisely that conclusion.[17] The policy precludes dependents who are totally disabled from becoming insured until the first day of the month following the date that they are no longer totally disabled. The court reiterates that David Craft conceded that his son was totally disabled during the entirety of his hospitalization. Consistent with the terms of its policy, on the first day of the month following Justin's discharge from the hospital, Northbrook began providing coverage for Justin. There is thus no basis upon which to conclude that Northbrook wrongly

denied benefits for Justin's medical expenses from April 1, 1985 to October 1, 1985.[18]

## CONCLUSION

Essentially, plaintiffs' only response to defendants' motions is their statement that "[s]urely, [they] were entitled to continued and interrupted [sic] insurance coverage." Plaintiffs do not, however, cite any authority, contractual, statutory or otherwise, in support of this contention. The evidence establishes that Justin Craft was not eligible for coverage under the terms of Klinger Electric's self-funded plan; as there was no coverage under that plan to begin with, there is simply no basis for plaintiffs to claim a right to continued and uninterrupted coverage under that plan. Further, Southern Apparel was not required by law to maintain coverage for the benefit of its employees and it was free to terminate the coverage that it did offer them under the circumstances of this case.[19] And North-

---

15. As in the case of the Klinger Electric plan, nothing has been presented to suggest that any claims were made for payment under the Southern Apparel self-funded plan after April 1985.

16. Plaintiffs argue in their response brief that "Medical Plans, Inc., as administrator of the Northbrook group policy, acted arbitrarily, capriciously and in bad faith by failing to properly investigate the causes or reasons Justin Craft was readmitted to the hospital on October 22, 1985, ... and on January 2, 1986, ... [since] [b]oth of these admissions were different than the original diagnoses made at the time of Justin's birth." The court fails to discern the reason for plaintiffs' advancing this argument in the context of this lawsuit, however, as David and Barbara Craft have repeatedly conceded that medical expenses for Justin's treatment after October 1, 1985 were, in fact, *paid* by Northbrook. Their only claim is for expenses incurred for the period April 1, 1985 to October 1, 1985. *See supra* n. 1. Moreover, the court would observe that the proof presented clearly shows that Medical Plans was *not* the administrator of the Northbrook policy.

17. The court would note that any claim for benefits which was denied by Northbrook prior to June 12, 1985 would be barred by the six-year statute of limitations of Miss.Code Ann. § 15–1–49. Because the limitations period would not operate to bar claims relating to any denial of benefits following June 12, 1985, however, the court must address the coverage issue.

18. Northbrook claims in its motion that it is entitled to summary judgment because plaintiffs have presented no evidence which reflects or tends to show that Northbrook ever denied any medical claims submitted by plaintiffs at any time, including the period from April 1, 1985 to October 1, 1985. In this regard, Northbrook does not assert that no claims were submitted by plaintiffs; rather, it states that it has been unable to locate a claim file or any documents pertaining to the plaintiffs' claims and thus has no record of plaintiffs' having made claims. Northbrook asserts that since plaintiffs have not come forward with evidence to show that it denied their claims for benefits, the court must enter summary judgment in its favor. It is not necessary that the court determine the propriety of summary judgment on this basis, however, since in the court's opinion, even were it established that claims were submitted and denied during the pertinent time frame, the denial of those claims would have been proper under the terms of Northbrook's policy.

19. The court would note that ERISA now requires, by virtue of the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 *et seq.*, that continuation or conversion coverage be offered to beneficiaries who would otherwise lose coverage upon the happening of certain events denominated as "qualifying events," *see* 29 U.S.C. § 1162, but an employer's change of insurance coverage is not such a qualifying event. COBRA would be inapplica-

brook was not required under the law to provide coverage for Justin Craft merely by virtue of the fact that he had been covered under the previous plan maintained by Southern Apparel.[20] In other words, neither Southern Apparel, Medical Plans nor Northbrook was required to ensure that Justin Craft enjoyed "continuous and [un]interrupted coverage." At most, there was an obligation on the part of Southern Apparel—and perhaps Medical Plans—to afford plaintiffs coverage under the extension of benefits provision of the Southern Apparel self-funded plan, yet plaintiffs failed to timely commence an action to enforce their rights to such benefits.[21]

Accordingly, it is ordered that the separate motions of defendants Medical Plans and of Northbrook for summary judgment are granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.

ble to the case at bar, in any event, as COBRA was effective from July 1986 and was not in effect at the time of the events giving rise to plaintiffs' claims.

20. In 1982, the Mississippi legislature enacted a "no loss/no gain" statute, under which the carrier of a replacement group health and accident policy must either provide benefits to group members without application of preexisting condition limitations or provide the same benefits as were provided by the prior policy or plan vis-a-vis preexisting conditions. See Miss.Code Ann. § 83–9–35. Even were this statute not preempted by ERISA, it would not have applied to impose a duty on Northbrook to provide coverage for Justin Craft for the reasons set forth in *Freeman v. Mowdy*, 743 F.Supp. 475 (S.D.Miss.1990).

21. The collapse of plaintiffs' claims for contractual damages would serve to doom their claims for punitive damages and extra-contractual damages for their alleged emotional distress. Such damages, though, would not have been recoverable under ERISA in any event. See *Corcoran*, 965 F.2d at 1336–37 (emotional distress damages unavailable under ERISA); *Sommers Drug Stores v. Corrigan Enters., Inc.*, 793 F.2d 1456 (5th Cir.1986), *reh'g denied en banc*, 797 F.2d 977 (5th Cir.1986) (punitive damages not recoverable under ERISA).