Edward M. BUTLER Administrator Ad Prosequendum for the Heirs-at-Law of Edward J. Butler, deceased and as Administrator of the Estate of Edward J. Butler, deceased and individually, Plaintiffs,

v.

Jack WU, M.D.; U.S. Healthcare, Inc.; and John Doe, M.D., Defendants.

Civ. A. No. 93–3597 (JEI).

United States District Court, D. New Jersey.

April 22, 1994.

As Modified May 17, 1994.

---

Klein, Cettei, Halden, & Goldberg by Richard C. Klein, Haddonfield, NJ, for plaintiffs.

Saul, Ewing, Remick, & Saul by Edward S. Wardell, Jeffrey S. Craig, Voorhees, NJ, for defendant U.S. Healthcare, Inc.

## MEMORANDUM OPINION GRANTING DEFENDANT U.S. HEALTHCARE'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO REMAND

IRENAS, District Judge.

Plaintiff filed a medical malpractice action against a health maintenance organization ("HMO") and one of its participating physicians, alleging that the negligence of the physician had contributed to the death of plaintiff's decedent. Defendant U.S. Healthcare ("USH") now moves to dismiss the complaint against it, alleging that plaintiff's state-law claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and that to the extent plaintiff's claims are not preempted by ERISA, the New Jersey HMO Act ("HMO Act"), N.J.S.A. 26:2J–1 *et seq.*, renders USH immune from suit. Plaintiffs oppose the motion and move for remand. Because we find that plaintiff's state law claims are preempted by ERISA, defendant's motion will be granted. In addition, because the remaining action is a state-law malpractice suit over which we lack subject matter jurisdiction, plaintiff's cross-motion to remand will be granted.

## I.  BACKGROUND

### A.  Factual Background

Defendant U.S. Healthcare, Inc. is a health maintenance organization governed by the ERISA and the New Jersey HMO Act. USH maintains a wholly owned subsidiary known as the Health Maintenance Organization of New Jersey ("HMO–NJ"), which contracts with independent physicians to provide health care services to employees of its contracted member groups.[1]  Plaintiff's decedent, Edward J. Butler ("Butler"), was a participant in HMO–NJ by means of his employment with the Orleans Group.

On January 15, 1991, Butler went to Dr. Jack Wu because of a sore throat and difficulty swallowing.  Complaint at ¶ 10.  Butler continued to feel discomfort and on March 19, 1991, Dr. Wu referred him to Dr. Angello S. Agro for his throat problems.  *Id.* at ¶ 12. Dr. Agro diagnosed Butler as suffering from a swelling of the epiglottis with erythema,[2] a jugulodigastric node on the left side of the neck, and a supraglottic neoplasm.  Butler subsequently underwent a laryngoscopy and tracheostomy on March 24, 1991.  *Id.* at ¶ 13. He died on June 26, 1992.  *Id.* at ¶ 16.

### B.  Procedural Background

On March 19, 1993, plaintiff brought suit in the Superior Court of New Jersey, Law Division, Camden County, against Dr. Wu, USH, and other unnamed physicians, alleging causes of action for negligence, constructive misrepresentation, malpractice, breach of warranty, and wrongful death.  Plaintiff contended that Dr. Wu's inaction caused his decedent to suffer severe pain, permanent injury, and disfigurement, and ultimately led to Butler's death.  Plaintiff also argued that USH was liable for failing to supervise the care and medical treatment provided by Dr. Wu.

USH filed a notice of removal to the United States District Court for the District of New Jersey, asserting that plaintiff's claims "related to" an employee benefit plan as that term is defined by ERISA, and were therefore subject to federal jurisdiction.  The petition for removal was granted on August 13, 1993.

On November 3, 1993, USH filed a motion to dismiss for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6), and in the alternative moved for summary judgment pursuant to Fed.R.Civ.P. 56.  The gist of the defendant's submission was that the plaintiff's state-law tort claims against USH were preempted by ERISA, and, that to the extent they were not preempted, the HMO Act rendered it immune from suit.  Plaintiff filed a cross-motion for remand, contending that ERISA did not apply to the facts of this case and therefore the federal courts did not have subject matter jurisdiction.

## II.  LEGAL ANALYSIS

### A.  Standard of Review

Under Fed.R.Civ.P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,*

---

**1.**  Participating physicians and hospitals are independent providers and are neither agents nor employees of HMO–NJ.  HMO–NJ is not a provider of health care services in the State of New Jersey and does not medically treat anyone. Certification of Mary T. Adams, Esquire at ¶ 4. Neither HMO–NJ nor USH ever treated Butler for any medical condition.  *Id.* at ¶ 5.  While USH had a contractual relationship with participating employers to administer the insurance benefits of their employees, it did not (nor did any of its subsidiaries) deliver services or care directly to or operate a health care facility for any plan participants.  *Id.*

**2.**  Erythema is defined as "an abnormal reddening of the skin, due to disease, poison, irritation, etc., as the redness caused by excessive exposure to the sun."  *Attorney's Dictionary of Medicine* E–126 (1987).

477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party such that a reasonable jury could return a verdict for that party. *Id.* A non-moving party may not rest upon mere allegations, general denials, or vague statements. If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Bixler v. Central Penn. Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3d Cir.1993); *Trap Rock Indus. Inc. v. Local 825, Int'l Union of Operating Engineers,* 982 F.2d 884, 980–91 (3d Cir.1992).

■ The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Finally, summary judgment should be granted unless a dispute over a material fact is genuine, which the Court has defined as such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. The Scope of Preemption Under ERISA

In crafting ERISA, Congress intentionally adopted a broad preemption clause.[3] Section 514(a) of the statute provides that its provisions "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This preemption provision has been broadly construed by the Supreme Court to include state statutory and common-law actions that "relate to" employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987);

*accord Shiffler v. Equitable Life Assur. Soc.,* 838 F.2d 78 (3d Cir.1988).

According to the Supreme Court, a state law "relates to" an employee benefit plan when "it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The applicability of ERISA preemption in the instant case, therefore, turns on whether a state-law tort claim premised on vicarious liability for medical malpractice "relates to" USH's employee benefit plan.

In an early case addressing the issue, *Altieri v. CIGNA Dental Health, Inc.,* 753 F.Supp. 61, 64 (D.Conn.1990), the District of Connecticut found that ERISA preempted state-law negligence claims against a benefit plan premised on the alleged malpractice of the plan's providers, because the claims arose from the delivery of health benefits and thus "related to" a benefit plan.

*Altieri* involved a claim for dental malpractice in which the plaintiff sued both his dentist and his dental health plan, alleging that the health plan was negligent (1) in not sufficiently evaluating its medical care providers and (2) in failing to provide plaintiff with competent medical care. *Id.* The court found that since the crux of the plaintiff's claim was the circumstances of medical treatment under the health services plan, the claim "related to" the benefit plan and was therefore preempted by ERISA. *Id.* at 64. The court concluded that the plaintiff's claims were preempted because "they all 'had one central feature: the circumstances of the [the plaintiff's] medical treatment under his employer's [dental] services plan for employees.'" *Id.* (quoting *Rollo v. Maxicare of Louisiana, Inc.,* 695 F.Supp. 245, 248 (E.D.La.1988) (holding that ERISA preempted employee's state law claims)).

**3.** The broad scope and purposes of the ERISA Preemption Doctrine were recognized by the Supreme Court in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). As the Supreme Court explained, Congress enacted ERISA to:

protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting ... of financial and other information with respect thereto, by es-

tablishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefits plans, and by providing for appropriate remedies, sanctions and ready access to the federal courts.

481 U.S. at 44, 107 S.Ct. at 1551: *see also* 29 U.S.C. § 1001 (setting forth Congressional findings and declaration of policy with reference to ERISA).

Other courts followed the *Altieri* lead. In *Corcoran v. United Healthcare, Inc.,* 965 F.2d 1321 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992), the Fifth Circuit held that ERISA preempted a medical malpractice action brought against an administrative entity whose function involved furnishing medical benefits and even giving "medical advice." *Id.* at 1331. In so holding the *Corcoran* court observed that Congress "enacted a preemption clause so broad and a statute so comprehensive that it would be incompatible with the language, structure and purpose of the statute to allow tort suits against entities so integrally connected with a plan." *Id.* at 1334. In affirming the decision of the district court to grant summary judgment, the Fifth Circuit found that although plaintiff's claims did not explicitly refer to or were premised on an ERISA plan, the negligence-based causes of action had a sufficient effect on the ERISA plan to warrant their preemption. *Id.* at 1334.

A recent case from this District has likewise concluded that state-law negligence claims arising from the circumstances of treatment under the health care plan are preempted under ERISA. The plaintiffs in *Ricci v. Gooberman,* 840 F.Supp. 316, 317 (D.N.J.1993), sought to hold an HMO vicariously liable for a doctor's failing to advise plaintiff of certain test abnormalities and for careless, reckless treatment. 840 F.Supp. at 316. Like the court in *Altieri,* the *Ricci* court reasoned that the basis of the plaintiff's claim was the circumstances of the decedent's medical treatment under her employee medical services plan. *Id.* at 317. Therefore, the court held, the negligence claim "related to" a benefit plan and was preempted by ERISA. *Id.*

Another case from the Eastern District of Pennsylvania, building on *Ricci,* discussed the policy implications of holding HMO's responsible for the negligence of participating physicians. In *Dukes v. United States Health Care Systems of Pennsylvania, Inc.,*

848 F.Supp. 39 (E.D.Pa. 1994), the court found that ERISA preempted state-law claims for alleged malpractice. The court relied on and found persuasive the reasoning of both *Altieri* and *Ricci* that a malpractice claim against an HMO "relates to" a benefit plan because the claim is based on the circumstances of medical treatment provided pursuant to the plan. Moreover, the court expressed a "serious reservation about the policy implications of holding an HMO liable for state law claims arising from the negligence of physicians and hospitals. If an HMO such as United States Health Care Systems is obliged to act as a malpractice insurer for health care providers, higher costs will invariably be passed along to health care consumers." *Id.*

We concur with the reasoning adopted by these courts and others who have concluded that ERISA preempts state-law tort claims brought against an HMO for the negligence of one of its participating physicians, where the HMO does not itself provide health care services. *See, e.g., Kuhl v. Lincoln National Health Plan of Kansas City Inc.,* 999 F.2d 298 (8th Cir.1993); *Nealy v. U.S. Healthcare HMO,* 844 F.Supp. 966 (S.D.N.Y.1994); *Diaz v. Texas Health Enterprises,* 822 F.Supp. 1258 (W.D.Texas 1993); *Craft v. Northbrook Life Insurance Company,* 813 F.Supp. 464 (S.D.Miss.1993); *but see Elsesser v. Hospital of the Philadelphia College of Osteopathic Medicine, Parkview Division,* 802 F.Supp. 1286 (E.D.Pa.1992); *Independence HMO, Inc. v. Smith,* 733 F.Supp. 983 (E.D.Pa.1990). Plaintiff's claims clearly address the circumstances of his medical treatment under his health care plan and are thus preempted by ERISA.

We recognize that organizations grouped together under the rubric of "HMOs" vary widely in terms of the degree to which they act as direct health care providers, and, conversely, the degree to which they act as traditional insurers.[4] As noted in *Robbins v.*

---

**4.** The difference between HMOs that contract with other entities for the provision of medical services and those that provide the services themselves was recently recognized by the Third Circuit, albeit in a context different from that of the instant case. In *Geisinger Health Plan v.*

*Commissioner of Internal Revenue,* 985 F.2d 1210 (3d Cir.1993), appellee ("Geisinger"), sought a declaratory judgment that it was a tax-exempt entity under § 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). The Tax Court

*HIP of New Jersey,* 264 N.J.Super. 572, 574–75, 625 A.2d 45 (Law Div.1993):

> HMOs are authorized to receive funds by loan or otherwise; to purchase, lease, contract and maintain health care facilities and ancillary equipment; to make loans to medical groups under contract to the HMO and to assume responsibility for the furnishing of health care services through providers which are under contract with or employed by the HMO to persons including but not limited to enrollees. HMOs are also authorized to contract with others to have them perform on behalf of the HMO certain functions such as marketing, enrollment and administration. HMOs also may contract with an insurance company licensed in New Jersey or with a hospital or medical service corporation authorized to do business in New Jersey, for the provision of insurance, indemnity, or reimbursement against the cost of health care services provided by the HMO. N.J.S.A. 26:2J–5.

Under this broad umbrella an HMO may become a health care provider that directly employs physicians, nurses, and other health care professionals, or owns and operates a health care facility. Indeed, N.J.S.A. 26:2J–25(d) recognizes that certain individuals "in the arrangements of a health maintenance organization" will be the "actual provider[s] of health care service or supplies directly to enrollees and their families." As noted in *Robbins,* these individuals do not enjoy any statutory immunity. 264 N.J.Super. at 576, 625 A.2d 45.

To the extent that HMOs such as USH offer no medical services, they are closer to traditional insurers.[5] These HMOs provide insurance coverage if the insured uses health care professionals or facilities approved in advance by the HMO. HMO approval of a doctor or hospital in this instance is generally based on the provider's contractual obligation to accept a predetermined fee when treating HMO members, rather than upon any kind of evaluation of professional competence—other than proper licensure.

■ We have no difficulty in concluding that state-law negligence claims against HMOs are preempted by ERISA where, as in this case, the HMO is fulfilling a role closer to that of a traditional insurer than that of a direct provider of health care services. It may be that as the health care industry evolves, the line between arranging and paying for health care services and directly providing such services may become blurry. However, the distinction exists today, and whenever the line is crossed there may be a change in the policy considerations which inform the interpretation of the preemption provision contained in 29 U.S.C. § 1144(a). Therefore, we do not address whether ERISA would preempt malpractice actions brought against an HMO which directly employed the allegedly negligent doctor, which directly operated the health care facility where such doctor worked, or which in some other fashion was more directly involved as a provider of medical services. *See Robbins,* 264 N.J.Super. at 576, 625 A.2d 45.

### III. CONCLUSION

For the foregoing reasons, defendant U.S. Healthcare's motion to dismiss will be granted. Moreover, since the case that remains is a state-law malpractice action between a physician and his patient over which we have no subject matter jurisdiction, we will remand

found that Geisinger was exempt, and the Commissioner appealed.

In reversing the decision of the Tax Court, the Third Circuit distinguished an earlier decision, *Sound Health Association v. Commissioner,* 71 T.C. 158, 1978 WL 3393 (1978), *acq.* 1981–2 C.B. 2, which had found an HMO exempt from taxation. The court noted several salient differences between the two HMOs, one of which was the fact that "the *Sound Health* HMO provided health care services itself rather than simply arranging for others to provide them to its subscribers." 985 F.2d at 1218. In addition, the court found that the *Sound*

*Health* HMO offered a number of "community benefits" that were not offered by Geisinger, such as an outpatient clinic, adjusted rates and free care for some non-subscribers, and free public educational programs. Finding that the Geisinger health plan "benefit[ted] no one but its subscribers," the court concluded that it was not a tax-exempt entity under § 501(c)(3).

5. There is no allegation that Dr. Wu was employed by USH, or that the plaintiff's decedent received treatment at a health care facility owned or operated by USH.

the matter to the Superior Court of New Jersey, Law Division, Camden County. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). An appropriate order will be entered on even date herewith.